MICHAEL T. STARR v. GREAT NORTHERN RAILWAY COMPANY and
Others.[1]

December 24, 1896.

Nos. 10,315—(87).

Carrier—Injury to Person on Train—Violation of G. S. 1894, § 2706—
Limiting Liability.

The plaintiff, while engaged in the business of news agent on defendant's train, was injured by a collision caused by the negligence of defendant in not stopping its train before arriving at a railroad crossing, as required by G. S. 1894, § 2706. The statute referred to requires railroad companies to cause all their trains to entirely stop not more than 60 rods and not less than 10 rods before each arrival at the crossing of any other railroad, and provides that every corporation that violates the provisions of the statute is liable to a forfeiture of not more than $100 nor less than $20, to be recovered in a civil action, and is further liable in the full amount of damages done to person or property in consequence of any neglect to comply with the requirements of the statute. *Held*, in view of the provisions and manifest object of this statute, that a contract between the defendant and plaintiff, exempting the former from liability for injuries caused by its negligence, is void, as against public policy, as respects negligence consisting of a violation of the statute; and this, too, although the defendant may not have borne to the plaintiff the relation of common carrier.

Appeal by defendants Great Northern Railway Company and
Thomas F. Oakes and others, as receivers of the Northern Pacific
Railroad Company, from a judgment of the district court for Ramsey
county, in favor of plaintiff, after a trial before Charles D. Kerr, J.,
and a jury. The case against the Great Northern Company was dismissed. Affirmed.

*C. W. Bunn* and *L. T. Chamberlain*, for appellants Oakes and
others.

*Stevens, O'Brien, Cole & Albrecht*, for plaintiff respondent.
*Flandrau, Squires & Cutcheon*, for intervenor Riley.

BUCK, J. On November 24, 1894, the plaintiff was acting as news
agent, selling papers, periodicals, and fruit, on the railroad trains

[1] Reported in 69 N. W. 632.

operated by the receivers of the Northern Pacific Railroad Company, named, among others, as defendants herein. At the city of St. Cloud, in this state, the Northern Pacific Railroad crosses the Great Northern Railway, owned by one of the defendants herein. About 4 o'clock a. m., before daylight, on the day above named, the operatives of a freight train on the Great Northern Railway and a passenger train on the Northern Pacific Railroad on which plaintiff was riding, by their gross negligence, caused a collision at such crossing, whereby this plaintiff was injured.

Plaintiff sued all of the defendants for injuries sustained by him. The intervenor was brought into the case, upon notice by the receivers, to defend the action by reason of certain contracts with the plaintiff and with the Northern Pacific Railroad Company which will be referred to hereinafter. At the trial of the cause a verdict was ordered in favor of the Northern Pacific Railroad Company, it being, at the time of the collision, in the hands of the defendant receivers. The question of the negligence of the Great Northern Railway Company was submitted to the jury, and at the same time the court instructed it that the evidence showed conclusively that the receivers were guilty of negligence. The jury returned a verdict in favor of the plaintiff, and against the Great Northern Railway Company and the defendants Thomas F. Oakes, Henry C. Payne, and Henry C. Rouse, as receivers of the Northern Pacific Railroad Company, and their successors in office as such receivers, for the sum of $1,000. The defendants appealed from the judgment entered upon the verdict.

No question is seriously raised as to the negligence of both the Great Northern Railway Company and the receivers in operating their roads at the time of the collision resulting in the injury to the plaintiff. The receivers seek to escape liability upon the ground that the plaintiff, who was a news agent of his employer, the intervenor, Riley, upon the Northern Pacific train, had, by virtue of a contract between himself and Riley, released the railroad company and the receivers from the consequences of their actions, and also upon the further ground that they had a contract with Riley by which he insured them against the result of their actions, and therefore they are entitled to a judgment against him in case of plaintiff's recover-

ing a judgment against them. The contract between Riley and the Northern Pacific Railroad Company is dated January 1, 1890, before the appointment of the defendant receivers, and was by its terms to remain in force for the period of five years from its date, subject to be terminated on 30 days' notice, and in part contained the following provisions:

"During the period while this contract shall remain in force, the party of the second part shall have and enjoy the sole and exclusive right and privilege of selling and offering for sale, by himself or by his agents, upon all passenger trains of the party of the first part, on the several lines of railroad operated by it west of St. Paul or Ashland, such newspapers, printed books, periodicals, and other articles commonly sold by train news agents as the party of the second part may choose to sell, which shall not be of a character objectionable to the party of the first part. * * * The party of the second part shall be entitled to free passage over the lines of railroad aforesaid, upon the trains aforesaid, for himself and his agents, engaged in carrying on the business contemplated by this contract: provided, however, that not more than one agent shall be entitled to a free passage upon any one train. * * * The party of the second part hereby releases and discharges the party of the first part from all liability for damages received by any property of the party of the second part while upon the trains of the party of the first part, and from all liability from injuries suffered by any agent or employé of the party of the second part while on any train or upon any premises of the party of the first part, whether such damage or injury shall be caused by the negligence or misconduct of the agents or employés of the party of the first part or otherwise; it being intended that the party of the second part shall, and does hereby, assume all risk of damage to his property or injury to any of his agents or employés while upon the trains or premises of the party of the first part."

The consideration which Riley agreed to pay the railroad company for this privilege from January 1, 1893, to January 1, 1895, was $1,000 per month, and forfeitable, at the option of the railroad company, upon nonpayment. The contract between plaintiff and Riley was dated April 19, 1894, and provided that plaintiff should act as news agent for Riley, and sell his goods, wares, and merchandise on the passenger trains, and in consideration thereof Riley agreed to pay him a commision of 15 per cent. on the amount which he sold. This contract also recited, in substance, the provisions of the contract between Riley and the railroad company in regard to a release of all liability for injuries by any agent or employé of Riley while on

any train upon the premises of said company, and contained, also, this further provision:

"The said party of the second part doth further agree with the said party of the first part hereto that the said party of the second part will release and discharge, and doth hereby release and discharge, the said party of the first part from all liability to the said party of the second part under said agreement with said company, and the said company from all liability for injuries suffered by the party of the second part while on any train or upon the premises of said company, whether such damage or injury shall be caused by the negligence or misconduct of the agents or employés of said company or otherwise; it being intended that the party of the second part shall, and doth hereby, assume all risks of injury to himself while upon the trains and premises of said company. W. C. Riley. M. T. Starr, per D. H. McGuire."

We do not deem it necessary to discuss or determine several of the questions raised and argued by counsel, because, in our opinion, the case can be properly and legally disposed of under the provisions of G. S. 1894, § 2706, which in part reads as follows:

"Every railroad corporation organized under this title shall cause all its trains of cars for passengers to stop upon each arrival at a station advertised by such corporation as a station for receiving passengers upon such trains, at least one minute: provided, all regular passenger trains shall stop a sufficient length of time at the railroad station of county seats to receive and let off passengers with safety; and also cause all its trains of cars to entirely stop not more than sixty rods, and not less than ten rods, before each arrival at the crossing of any other railroad; and every corporation, and every person in the employment of such corporation, that violates, or causes or permits to be violated, the provisions of this section, is liable to a forfeiture of not more than one hundred dollars, nor less than twenty dollars, to be recovered in a civil action before any justice of the peace of the county in which such violation occurs, upon the complaint of any person, one-half to go to the complainant, and the remainder to the use of common schools in the county; and such company is further liable in the full amount of damages done to property or person in consequence of any neglect on the part of its agents or employés to comply with the requirements of this section."

In view of this provision of the statute, we think that it is quite immaterial whether the plaintiff was or was not, technically, a passenger upon the train, or whether the railroad company occupied the relation of common carrier as to him. The plaintiff was on the train with the consent of the railroad company, with the privilege

of selling certain commodities thereon, and for which privilege the company had been paid a full consideration. In the case of Jacobus v. St. Paul & C. R. Co., 20 Minn. 110 (125), this court held that:

"There are two distinct considerations upon which the stringent rule as to the duty and liability of carriers of passengers rests. One is a regard for the safety of the passenger on his own account, and the other is a regard for his safety as a citizen of the state."

This provision of the statute goes much further than the rule there laid down, in this: that a railroad company guilty of negligence in the respects therein mentioned is liable to the full amount for damage done to property or person. It is quite immaterial, therefore, in what capacity the person injured may be upon the train. If not himself guilty of contributory negligence, and he is rightfully there, he can maintain an action for injury done him by such negligence of the railroad company.

The rule seems to be a stringent one, but the interest of the state in the life and welfare of the citizen is paramount, and not affected by the mere consideration of his not being a passenger on the railroad train. Where human life may thus be endangered or destroyed, the state may pass laws of a prohibitory character, and make the party violating them liable in damages to the party thereby injured. And when, by express prohibitory enactments, the state has thus declared its public policy, and provided a remedy for enforcing it, we do not think that it is competent for a railroad company to stipulate against this statutory liability. If it were otherwise, the state might, in its attempt to enforce a wise public policy, be completely thwarted, and the law thus nullified. This right of the state to interfere in behalf of the welfare of its citizens is an important one, and ought not to be bartered away by the contract of parties, and especially by railroad companies, who derive their rights to operate their roads from the sovereign power. Liability upon the part of the railroad company in this respect will bring about a corresponding vigilance, and thus the safety of the citizen and protection of property be secured. We are therefore of the opinion that the contracts entered into, releasing the company from any liability for negligence upon its part in operating its road, were in conflict with the public policy enunciated by the statutory provisions referred to, and are void.

There is no merit in the contention of the receivers that they are not liable, as they were operating the Northern Pacific Railroad at the time of the injury. See 20 Am. & Eng. Enc. Law, tit. "Receivers (Railroads)," pp. 378, 379, and cases cited in notes.

Judgment affirmed.

## On Application for Reargument.

### (January 11, 1897.)

PER CURIAM. One of the grounds of the application for reargument is that the court has not passed upon the question whether the intervenor, Riley, is liable upon his contract to indemnify the receivers. Riley intervened on his own motion, asking: (1) That the action be dismissed as to the receivers; (2) that any damages sustained by the plaintiff may be recovered of the Great Northern Railway Company; (3) that, if plaintiff should recover against the receivers, then that the intervenor may have judgment against him upon his bond of indemnity, and that such judgment may be set off against plaintiff's judgment against the receivers.

The answer of the receivers is wholly responsive to the complaint of the plaintiff, and in their pleadings they nowhere ask for any relief against the intervenor. After verdict, the receivers moved for a new trial, and, in case that was denied, for judgment against the intervenor. These motions having been denied, judgment was entered on the verdict against the receivers and the Great Northern Railway Company. The appeal of the receivers was only from this judgment. On this state of facts, the liability of the intervenor to the receivers is not involved in this appeal.

Motion denied.