BRACE, P. I.
On the 28th of December, 1889, the plaintiff and defendant entered into a written contract by which the plaintiff for and in consideration of the sum of $1,500, and of the covenants of the defendant therein contained, granted to said news company the privilege of selling upon its regular passenger trains during the year beginning January, 1890, “periodicals, newspapers, books, confections, fruits, cigars, cakes, pies and sandwiches,” under certain conditions and regulations therein set out, said contract containing among others the following covenants upon the part of the-defendant, to wit:
“And in consideration of the foregoing grant and the privileges therein specified said news company releases said railrokd company from any right of action, claim or demand which may accrue to it by reason of the loss of any of its property while being transmitted on any of the trains of the railroad company under the terms of this contract, and further agrees for such consideration to indemnify said railroad company and save it harmless from all claims, demands, damages, actions, costs, and charges to which the railroad company may be subject or which it may have to pay by reason of any injury to any person or property, or loss of life or property, suffered or sustained by any agent or employee of the news company while in, upon or about any of the stations,platforms, cars or other premises of the railroad company, whether such injuries or loss arise from the negligence of the employees of said railroad company or otherwise.”
*383 This is an action for damages for br.each of the second covenant aforesaid, in which the plaintiff recovered judgment in the circuit court of Jackson county, for the sum of $5,000, and the defendant appeals. The case was tried by the court without a jury, the court finding the facts to be as follows:
“1. Plaintiff is a railroad corporation, owning and operating at the times mentioned in the amended petition, a line of railway in the States of Tennessee, Mississippi and Alabama, and defendant is and was at the same times a corporation organized and existing under the laws of Kentucky, and having an office for the transaction of its usual and customary business in Jackson county, Missouri, and at such times was engaged in selling newspapers, books, periodicals and merchandise on railroad trains throughout the country through agents and servants commonly and generally known as 'newsboys.’ And in conducting such business it was usual and necessary for such agents and servants to pass back and forth from car to car on the trains while the latter were in motion.
''2. On December 28, 1889, plaintiff and defendant entered into a written contract, a copy of which is set forth in the amended petition filed herein, on the 22nd day of February, 1896.
"3. Pursuant to the terms of said contract said plaintiff throughout the year 1890, received and carried upon its trains the agents, employees and merchandise of said defendant, placed thereon by the latter, and afforded such agents and employees facilities for selling and offering for sale such merchandise. Among such agents and employees of said defendant was one George W. Davis, who in the course of his employment and acting as agent for defendant, did on the 21st day of October, 1890, at plaintiff’s station of Birmingham, Alabama, under the provisions of said contract, enter and go upon one of plaintiff’s passenger trains with the merchandise furnished him by said defendant, and for the *384 purpose of selling the same thereon. On the same day, while said train was moving over plaintiff’s said road, between said Birmingham and the station of Ensley, and while in said State of Alabama, it came in collision with another train on plaintiff’s road, and in consequence thereof, said George W. Davis, while so on said passenger train as an agent and employee of said defendant as aforesaid, received injuries from which he subsequently died. Such collision occurred and such death was caused by the negligence of plaintiff’s employees in the operation of such train, and the personal representatives of Davis were thereby damaged in the sum of $5,000.
“4. The laws of Alabama (sec. 21, vol. 1, of the Civil Code of 1896), in force at the time the plaintiff became and was liable to the personal representative of such Davis for such damages as were occasioned by the negligence aforesaid, provided as follows: ‘A personal representative may maintain an action and recover such damages as the jury may assess, for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death; such action shall not.abate by the death of the defendant, but may be revived against his personal representative ; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for such wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. Such action must be brought within two years from and after the death of the testator or intestate.’
“5. The true construction of said statute, as decided by the Supreme Court of Alabama,, which is the court of last resort in that State, is and was that a person entitled to recovery *385 at all thereunder, may recover any amount which a jury may see fit to allow, there being no limit fixed by law to the amount of the'verdict which a jury may render in an action under said statute.
“6. George W. Davis, received his injuries on the 21st day of October, 1890, and died therefrom on the 29th day of November, 1890; and his administrator instituted a suit in the ctiy court of Birmingham, Alabama, on February 2, 3891, against plaintiff for $50,000 damages for such injuries received as claimed through the negligence of the plaintiff. Plaintiff herein was duly served with process in such suit, which was on the 18th day of June, 1891, dismissed.
“7. After the death of George W. Davis, and on the 2d day of February, 1891, the probate court of Jefferson county, Alabama, a court having, under the laws of Alabama, full jurisdiction, appointed Eugene S. Smith as the administrator of said Davis, and under the laws of Alabama said administrator became and was the personal representative of said Davis and entitled to have and recover the damages authorized by the laws of Alabama for the death of said Davis through the negligence of the employees of plaintiff.
“8. On the 19th day of June, 1891, Eugene S. Smith, administrator of George W. Davis, deceased, instituted in the circuit court of Walker county, Alabama, a court of competent jurisdiction under the laws of Alabama, a suit againsc plaintiff for $50,000 damages for the death of said Davis, through the negligence of the plaintiff’s employees. The plaintiff herein,- as defendant therein, was duly summoned with process in accordance with the laws of Alabama. On the 16th day of February, 1892, said suit was dismissed.
“9. On the 18th day of September, 1891, Eugene S. Smith, ias administrator of George W. Davis, deceased, filed in the city court of Birmingham, Alabama, a court of competent jurisdiction under the laws of Alabama, a suit against this plaintiff for $20,000 damages for the death of George *386 W. Davis through the negligence of this plaintiff’s employees. Process was served on this plaintiff as required by the laws of Alabama, and this plaintiff as defendant therein entered its appearance to said suit. A jury was duly- impaneled in said cause and on the 18th day of September, 1891, rendered a verdict for the administrator, assessing the damages at $5,000, for which amount said court on the 18th day of September, 1891, rendered judgment in favor of the said administrator and against this plaintiff, which judgment this plaintiff on the 18th day of September, 1891, paid to said Eugene S. Smith, administrator of said Davis.
“10. As a matter of fact the verdict and judgment for $5,000 were entered by and with the consent of the parties, though the proof of this fact was received over the objection of the plaintiff that such proof was incompetent and immaterial. As a matter of fact there had been negotiations to compromise the case pending in Walker county, Alabama, and $5,000 was the best settlement that could be made, and was a reasonable sum to be allowed for the damages, and so it was decided between plaintiff and said administrator after long negotiation, that there should be a settlement for that amount, iand pursuant thereto it was agreed to dismiss the case in Walker county, and institute a new suit in the city court of Birmingham, Alabama, in which the jury should assess the damages at $5,000, and the court render judgment: therefor. This was all done in good faith and was a reasonable settlement.
“11. This plaintiff did hire doctors and incur expenses for medical treatment and hospital care of George W. Davis while he was suffering from his injuries, and paid therefor $130.85, which was a reasonable sum to pay therefor. It also hired an undertaker to prepare his body for burial and furnish a coffin therefor, and paid such undertaker $80, which was a reasonable sum to pay therefor. But the court refused *387 to allow plaintiff for that money so expended as aforesaid. To which refusal of the court the plaintiff excepted.
“12. This plaintiff on October 8, 1891, demanded of this defendant the $5,000 on account of the payment of the judgment aforesaid, and also said sum of $510.85, and this defendant refused to pay either of said sums.
“18. On the 21st day of February, 1891, this plaintiff notified this defendant of the pendency of said suit of said administrator in the city court, and was called upon by this plaintiff to defend the same or settle the claim, but refused to have anything to do with the defense of the case or settlement of tire claim, and thereafter and prior to the rendition of the judgment of the city court of Birmingham in the last case, this defendant was fully notified of the pendency of the case in Walker county, the negotiations for a settlement and. that the case would be settled for $5,000 and defendant made no objection to the amount, but said that it was a reasonable sum, and the only objection made by this defendant to the settlement was that it could not take any part in the defense or settlement, because it was insured by some insurance company which had the control of the matter.
“14. The collision in which the newsboy, George W. Davis, was injured, occurred by reason of the engineer of the passenger train mistaking a signal and starting from Birmingham with only the baggage car and two passenger coaches attached to his engine, having left the sleeping car, which was a part of the train, in Birmingham, and having started without the conductor or brakeman of the train. The engineer learned these facts upon stopping at Ensley, the first station west of Birmingham and about five miles therefrom. The fireman was on the engine with the engineer, and baggageman in the baggage car attached to the engine. There were a good many passengers in the two coaches. ■ Upon finding that he had left part of the train and the conductor and brakeman in Birmingham, the engineer asked the newsboy, *388 Davis, if the red lights were on the rear end of the coach and told him to get on the platform of the rear coach and that the train would be bached up to Birmingham for the conductor,, and also told him to signal if he saw anything in the way; thereupon Davis said he would, and started towards the back end of the train, and was afterwards seen looking through the rear door of the coach, but inside thereof — said rear door was locked — but at the time of the collision was running through the rear coach in the direction of the engine, and just after the collision was seen crawling on his hands in the aisle of the rear coach, dragging his legs, going towards the engine and right ahead of a witness seated four or five seats from the rear of the coach. As the collision came, the newsboy came running past two witnesses who sat about the fourth seat from the rear of the coach, the same being the front of the coach while backing towards Birmingham. The newsboy came from towards the rear door of the coach running towards the engine of the passenger train. The evidence fails to show that Davis obeyed the directions of the engineer except as above stated. Under the laws of Alabama railroad companies are liable for negligence of co-employees in some cases, and under the laws of that State Davis did not by reason of the directions of the engineer, even had he acted under such directions and obeyed them, become an employee of the railroad company or cease to be a servant of the news company.”
The finding of facts by the trial court is exhaustive, supported by the evidence, and furnishes a sufficient statement for the discussion of the legal questions raised. .
(1) It is contended that the contract sued on is against public policy, and is for that reason void. The argument in support of this contention is made from the standpoint of the debeased news agent and his rélation to the railroad company, and is predicated on the welEsettled principle that a common carrier can not by contract limit its liability to a passenger for the negligence of its servants. It may be conceded that the *389 news agent in this case was a pássenger on the train in which he lost his life and that the company conld not by a contract such as this, relieve itself of its duty to him as-a common carrier of passengers, or of its liability to him for the negligence of its servants. [Jones v. Railroad, 125 Mo. 666 ; Magoffin v. Railroad, 102 Mo. 540 ; Meller v. Railroad, 105 Mo. 455 ; Voight v. Railroad, 79 Fed. Rep. 561, and cases cited ; Railroad v. Lockwood, 17 Wall. 359 ; Starr v. Railroad, 67 Minn. 18.] But the contract in question is not with a passenger, it “is not with a person to whom the company owed a duty as a common carrier of passengers, nor does it in terms, as it could not in effect, attempt to relieve the railroad company from any of its duties or liabilities as such. The contract is simply one of indemnity by which the news company agreed for a valuable consideration to indemnify the railroad company against loss which the latter might sustain by reason of the duty it would incur to the news agent, as a common carrier of passengers, in carrying out the contract. In Phoenix Ins. Co. v. Erie Transportation Co., 117 U. S. 324, it was held by the Supreme Court of the United States, that “No rule of law or public policy is violated by allowing a ebmmon carrier, like any other person having either the general property, or a peculiar interest in goods, to have them insured against the usual perils, and to recover for any loss from such perils, though occasioned by the negligence of his own servants. By obtaining insurance, he does not diminish his own responsibility to the owners of the goods, but rather increases his means of meeting that responsibility.” In the subsequent case of California Ins. Co. v. Union Compress Co., 133 U. S. 415, that court was asked to review its announcement of this principle, to which it was replied: “Nor are we disposed to review our decision that common carriers can insure themselves against loss proceeding from the negligence of their own servants. The doctrine announced in the case cited has been referred to with • approval in the subsequent *390 cases of Orient Ins. Co. v. Adams, 123 U. S. 67, 72, and Liverpool Steam Co. v. Phoenix Ins. Co., 129 U. S. 397, 498.” That this doctrine is supported by the great weight of authority is manifested by the cases cited in the above cases, by others in the brief of counsel for the plaintiff and by some of those cited by counsel for the defendant. While in the great majority of the cases the principle has been applied to contracts of indemnity against damages for the loss of property; that it is equally applicable to like contracts against losses for injuries to passengers, has in two very recent cases been directly decided: American Casualty Ins. Company’s case (1896), 82 Md. 535 ; Boston & A. R. Co. v. Mercantile Trust & Deposit Co., 34 Atl. Rep. 778; Trenton Pass. Ry. Co. v. Guarantor’s Liability Indemnity Co. (1897), 60 N. J. L. 246. In these cases the question was maturely considered, and thoroughly discussed, and in each after a review of the authorities the conclusion reached was that “a contract to indemnify a common carrier of passengers against losses occurring from injuries to passengers carried by it, is not invalid as against public policy, because it covers losses resulting from its negligence, or negligence of its servants.” To the trenchant argument in support of this conclusion of Mc-Stterry, C. J., who delivered the opinion of the Maryland Court of Appeals in the first case, and which was highly commended and followed by the Supreme Court of New Jersey in the second, no additional force could be added by any words of ours. We shall therefore content ourselves for argument on this branch of the ease, with the following extract from that opinion. “Whilst the carrier will not be permitted by contract or otherwise to exempt himself from liability for losses caused by his own negligence or the negligence of his servants, there is no reason of public policy which prohibits him from contrac ting with a third person for insurance against these very same losses. Consequently he may by insurance indemnify himself against loss of or injury to 'property *391 intrusted to his care, even where the loss or injury is caused by his own or his servant’s negligence. This was decided in Phoenix Ins. Co. v. Erie & West Trans. Co., 117 U. S. 324; and the ground upon which the decision was based was that such insurance did not diminish the carrier’s own responsibility to the owner of the goods, but increased the means of meeting that responsibility. Notwithstanding such insurance the carrier remains liable to the owner or shipper of the goods, and by insuring them he merely contracts, as in every other instance of a reinsurance, with some one else for reimbursement for such loss. The doctrine announced in the Phoenix Ins. Company’s case, supra, was affirmed in Cal. Ins. Co. v. Union Compress Co., 133 U. S. 387, and is the settled law of the land. A reasonable restriction by contract of his common law liability and an insurance by the carrier of goods against loss are recognized by the law and are not in contravention of its policy to-day, whatever that policy might have been heretofore.
“It is obvious that .a carrier of passengers can not by contract restrict, diminish or limit that obligation to the public, or that duty to the passenger, which requires the exercise of the highest degree of care and diligence on his part. A contract which stipulates for or agrees to such relaxation, and therefore contemplates immunity from the carrier’s own negligence, would be utterly void; precisely as would a contract purporting to relieve a carrier of goods from liability for losses occasioned by his own or his servant’s negligence. But the policies before us are not contracts of that character. Neither in'express terms nor by implication do they profess or purport to abridge, in any way, the carrier’s common law liability for injuries to passengers, employees or strangers. These policies leave that liability precisely where and as complete as it was before they were written. They contain no provision impugning or questioning in the slightest degree the full measure of that responsibility. It is perfectly mani *392 fest, therefore, that they are not in terms contracts restricting or attempting to restrict the carrier’s conceded liability; and if they contravene public policy at all, it must and can only be incidentally and indirectly. This is all that can be imputed to them. But they are all, it is alleged, repugnant to public policy because by furnishing the carrier with a fund with which to reimburse himself for losses caused by his own negligence, their inevitable tendency or effect is to induce less vigilance, or to promote greater carelessness on the part of the carrier. Precisely the same reasoning would invalidate, as repugnant to public policy, every species of fire and marine insurance. To the extent that a fire insurance policy affords an individual protection against loss, to exactly the same extent it may be said the assured will become indifferent in guarding against casualities from fire. And in so far as carrier may have a policy covering goods and insuring them for his own benefit against losses arising from his or his servant’s negligence just so far will he be either tempted to be negligent, or become indifferent as to vigilance. But in neither instance can it be said that because a temptation to be negligent, may possibly result from the possession of an insurance policy, the contract of insurance necessarily begets negligence or conflicts with public policy. Nor can we assume as an unvarying rule, of which judicial notice will be taken, that a carrier of passengers who has secured an indemnity to reimburse himself for losses which his own negligence may produce, will, merely because and solely in consequence of having such indemnity- — which at best is but limited and partial — necessarily disregard the duty to exercise the highest degree of care. And unless it be assumed as a postulate that the mere possession of an indemnity will of itself necessarily and invariably produce negligence, it does not logically follow that such a policy or indemnity is even incidentally or indirectly repugnant to public policy. The indemnity in no way affects the liability of the carrier to the person injured.”
*393 The only distinction between those cases and the one in hand, is that in them the contracts were formal contracts of insurance with insurance companies, while the contract in question is a contract of indemnity by a news company. But a mere contract of insurance is nothing more nor less than a contract of indemnity against loss, as is this with the defendant, and the principles governing must be the same in each, and as nothing can be predicated of the contract in this case which could interfere with or affect the liability of the carrier to the person injured, there is nothing in it to take it out of the principle of those cases, or render it obnoxious to public policy. Hence we conclude that this contract can not be avoided as against public policy.
(2) It is next contended that “the defendant is not liable on the contract sued on for the reason that the newsboy was killed while acting as a lookout on plaintiff’s train, and while outside of his employment as news agent.” This theory of fact was presented upon the trial, and upon it the court declared the law to be: “The plaintiff could not take the newsboy, Davis, from the duties for which he was employed by the defendant, and send him to a place of danger to assist in the plaintiff’s own business, and while said Davis was at said place of danger by its, the plaintiff’s, own negligence injure said Davis so that thereafter he died, and then in this action recover the amount paid by it on account of the injuries so inflicted.by it on said Davis.”
If the court had found the fact to be as predicated in this contention, under this declaration of law its finding and judgment would have been for the defendant, but the court in substapee found the fact to be, that the newsboy was not in fact killed in a place of danger to which he had been exposed while in the employ of plaintiff, that is to say as' “a look-out on plaintiff’s train,” and the argument in support of it is aimed at the finding of fact, and not at an error of law, and as the finding of the court is supported by the evidence, that *394 finding is conclusive on appeal, as has been uniformly field in cases at law, wfiere tfie issues of fact are submitted to the court. [Sutter v. Raeder, 149 Mo. 297 ; Rogers v. Warren, 75 Mo. App. 271 ; Williams v. Monroe, 125 Mo. 574 ; Pitts v. Sheriff, 108 Mo. 110 ; Hamilton v. Boggess, 63 Mo. 233.] This point must be ruled against tfie defendant.
(3) Tfie defendant’s next contention is that tfie judgment of tfie circuit court is erroneous, “for tfie reason that plaintiff’s evidence showed that it compromised tfie claim made by tfie administrator without securing tfie assent of tfie defendant.”
As was said by Wagner, J., in Strong v. Phoenix Ins. Co., 62 Mo. 289, tfie rule to be deduced from tfie whole current of authorities on this subject is that “wfiere one is bound to protect another from a liability, fie is bound by tfie result of a litigation to which such other is a party, provided fie had notice of tfie litigation, and opportunity to control and manage it” — a rule that has been frequently announced and approved in tfie decisions of this court. [Garrison v. Babbage Trans. Co., 94 Mo. 130 ; City of St. Joseph v. Street Railway, 116 Mo. 636.]
That tfie defendant was notified of tfie pendency of tfie litigation which resulted in tfie judgment against tfie plaintiff for $5,000, on a liability against which tfie defendant by its contract had agreed to indemnify it, and was afforded ample opportunity to control and manage that litigation if it had seen proper to do so, was abundantly shown by tfie evidence, and was so found by tfie court (13tfi finding.)
Tfie fact that the amount of tfie judgment was determined by agreement, would not take tfie judgment without the protection of the defendant’s covenant “to indemnify tfie plaintiff for all damage to which it may be subject or which it may have to pay.” Tfie only effect tfie consent could have would be. to reduce tfie judgment from conclusive to presumptive evidence only of tfie defendant’s liability on its *395 contract, and of tlie amount thereof, and to afford it the right and privilege of showing either that the judgment was urocured by a fraudulent collusion, was not founded upon a legal liability, or that it exceeded such liability. [Connor v. Reeves, 103 N. Y. 527.] This the defendant did not attempt to show, but on the contrary it affirmatively appeared from the evidence, and the court found that the settlement was made in good faith, that there was a legal liability for which the judgment was rendered, and that the amount thereof was reasonable (10th and 14th findings.) ■
We find no error in this record for which the judgment of the circuit court should be reversed, and the same is affirmed.
All concur.