## CITY OF SPRINGFIELD, Appellant, v. ENOCH PLUMMER et al., Respondents.

### St. Louis Court of Appeals, May 7, 1901.

1. **Practice, Trial: RES ADJUDICATA: ISSUE: JUDGMENT.** An issue once tried on its merits and reduced to final judgment, how-ever raised, precludes the retrial of the same issue between the same parties in any other form of action.

2. ———: ———: ———: **RECORD OF CASE: PLEADINGS.** In the case at bar, the Polk county judgment is conclusive of all the issues involved in the pleadings in that case, and is conclusive against the city of Springfield that Scott came to his death by reason of its

negligence, and is conclusive as between Mrs. Scott and Plummer that Scott did not come to his death through the negligence of Plummer, but it is not conclusive of the latter fact as between Plummer and the city, who were co-defendants in the suit, unless that issue was raised by them in some manner at the trial.

3. ———: ———: JUDGMENT A BAR TO ANOTHER SUIT, WHEN. In order that a judgment may constitute a bar to another suit it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases and must be determined on its merits.

4. ———: ———: PARTIES TO A SUIT, WHO ARE. All parties having a right to control the proceedings, to make defense, to produce or examine witnesses and to appeal from the decision if an appeal lies, are parties to a suit.

5. ———: ———: ———: ADVERSARY PARTIES. Parties to a judgment are not bound by it in a subsequent controversy between each other, unless they were adversary parties in the original action.

6. ———: ———: ———. And in the case at bar, under our practice act, Plummer and the city of Springfield, as co-defendants in the Scott suit against them for negligence, might have set forth conflicting interests and called for appropriate relief, but it does not appear on the face of the petition that they did this, neither does it appear from the petition that the point in controversy in this suit, to-wit, that Scott came to his death by the sole negligence of the city of Springfield and not by the negligence of Plummer, was adjudicated as between them as co-defendants.

7. Notice of Pendency of Suit: PRACTICE, TRIAL. Notice of the pendency of a suit is implied where one answerable over, had actual knowledge of the suit and participated in its defense.

Appeal from Greene Circuit Court.—*Hon. James Tilford Neville,* Judge.

REVERSED AND REMANDED.

STATEMENT OF THE CASE.

Omitting caption, the petition is as follows:

"Comes now the plaintiff, the city of Springfield, and for its second amended petition herein, avers that the city of Springfield is a municipal corporation organized and existing under the laws of the State of Missouri as a city of the third class.

"Plaintiff states that the defendant, Cooper Bros., is a co-partnership, composed of George Cooper and Harry Cooper, doing business under the firm name of Cooper Bros.

"Plaintiff states that prior to the first day of January, 1896, said city adopted a sewerage system under the provisions of the laws of the State of Missouri and constructed a general sewerage system in said city, and laid off said city into sewerage districts.

"And that prior to the first day of September, 1896, said city, by ordinance duly enacted, laid off, established and fixed the boundaries of sewerage district No. 2, of section No. 2 of the sewerage system of said city of Springfield.

"That the ground occupied by Phelps avenue (a public street in said city), between Jefferson street and Benton avenue, as well as the territory lying north of said Phelps avenue for a distance of two hundred feet, between said Jefferson street and Benton avenue, is and was embraced in said district No. 2 of section No. 2.

"Plaintiff states that by an ordinance duly enacted, a district sewer was ordered constructed in said sewer district No. 2 of section No. 2, and the city engineer of said city was directed to advertise for bids for the construction thereof.

"That afterwards, to-wit, on the — day of September, 1896, bids for constructing said sewer in said district were received by the city council, and it being found that the bid of the defendant, Enoch Plummer, was the lowest and best bid received, the bid of said Plummer was accepted; and on the twenty-sixth day of September, 1896, said city entered into

a written contract with said defendant Plummer for the con-
struction of said sewer in accordance with the terms of said
bid and in accordance with the plans and specifications for said
sewer, on file in the office of the city clerk of said city.

"Which said contract was signed by said city and the
said defendant Enoch Plummer, and said defendants Cooper
Bros. and W. T. Morrow.

"By the terms of said contract said Plummer was to
furnish all material and labor necessary for the prosecution of
said work, and was to excavate and lay sewerpipe for an under-
ground sewerage in said city in accordance with the plans and
specifications for said sewer, which said plans and specifications
were written into and made a part of said contract. It was
therein provided that said contractor was to strictly observe all
the requirements contained in said contract, and to build
and construct said sewer in a good and workmanlike manner,
and connect the same, when completed, with the general sew-
erage system of said city, and at all times, during the con-
struction of said sewer, surround said work with all necessary
safeguards to prevent damage to surrounding property, and
to the lives and persons of the men engaged upon said work.

"Said defendant bound himself by said contract to se-
curely brace up and secure the sides or walls of any sewer-ditch
or trench which might require such bracing up, to prevent the
same from caving in; and it was further provided that if in
the prosecution of said work any watermain or waterpipe was
unearthed, or if said sewer-ditch was brought in contact with
any such watermain or waterpipe, said contractor should se-
curely brace up and support said watermain or waterpipe in
such manner as to prevent its falling into said sewer-ditch, and
in addition to securely bracing up and supporting such water-
main, it was provided that a good and sufficient foundation of
earth should be left for said waterpipe to rest upon and it was

also provided in said contract that bulkheads or pillars of earth should be left in said ditch at such places as might be required to render the walls of said sewer-ditch, as well as any waterpipe with which the same might come in contact, safe and secure from caving in or falling into said ditch. Said watermains or waterpipes therein referred to being a part of and connected with the waterworks system of said city, previously constructed and then in operation for the purpose of supplying the inhabitants of said city with water, which said water was supplied to the residents of the various parts of said city by means of iron pipes connected with the reservoir and pumping station of said waterworks system, through which said iron pipes, which were constantly filled with water, said water was propelled and forced by the pumps at said pumping station to the various parts of said city, all of which was authorized by ordinances of said city.

"Said defendants further contracted and agreed to hold and save harmless the said city of Springfield from any damages or actions arising against it, by reason of the neglect of said Plummer to surround the work with all necessary safeguards, as required by said contract and the ordinances of said city; but said defendants not to be liable beyond the sum of $3,000. The consideration expressed in said contract being the payment to said Plummer in special taxbills against the property in said sewer district liable for the cost of said sewer, the amounts as set forth in his said bid accepted by said city, which said consideration was a valuable one.

"Plaintiff further states that on the twenty-sixth day of September, 1896, the said defendants executed and delivered to the plaintiff herein a bond in the sum of three thousand dollars, conditioned upon the faithful performance of the terms of said contract by said defendant, which said bond is in words

and figures as follows, to-wit:

"*Bond.*—Know all men by these presents: That we, E. Plummer, as principal, and W. T. Morrow and Cooper Bros., as securities, are held and firmly bound unto the city of Springfield, in the sum of three thousand dollars, to be paid to the said city of Springfield, and for the payment of said sum of three thousand dollars, we, and each of us, hereby bind ourselves, our heirs, executors and administrators, firmly by these presents. The conditions of the above obligation are such that whereas, the above bounden has this day entered into a contract with the said city of Springfield, which contract is hereto attached, for the building, laying, making and constructing of a district sewer in district No. 2 of section No. 2. Now, therefore, if the said E. Plummer shall well and truly keep and perform all agreements on his part to be kept and performed, and faithfully and completely comply with all the conditions of said contract, and at the time stipulated in said contract, then said obligation shall be void. Otherwise it shall be in full force and effect. In testimony whereof, we have hereunto set our hands and seals this twenty-sixth day of September, 1899.

"E. PLUMMER,     (Seal).
"W. T. MORROW,     (Seal).
"COOPER BROS.     (Seal).

"Which said bond was duly accepted and approved by the proper authorities of said city of Springfield.

"Plaintiff avers that a breach was made in the conditions of said contract and bond, in this, that the defendants negligently failed to surround said sewer-ditch with proper safeguards as required by the terms of said contract, in that he negligently failed to brace up and support the sides of said sewer-ditch so as to render the same safe and secure from caving in, and also negligently failed to brace up and support a water-

pipe with which said sewer-ditch came in contact, at a point on said Phelps avenue about one hundred and fifty feet east of an alley intersecting said Phelps avenue between Jefferson street and Benton avenue, which said waterpipe was unearthed in the construction of said sewer at said point; and said defendant negligently failed to leave a safe and secure foundation of earth upon which for said waterpipe to rest and negligently failed to leave a sufficient number of bulkheads or pillars of earth in said ditch to render the same safe and secure at said point, as required by the terms of said contract.

"Plaintiff states that by reason of the failure of said defendant to comply with the terms of said contract aforementioned, that the sides of said ditch became and were liable to fall or cave in, and a waterpipe connected with the waterworks system, which had been unearthed at said point, became and was exposed, and that by reason of the negligent failure on the part of the defendant to properly brace up and protect the same as aforesaid, by properly bracing, and by leaving sufficient bulkheads, and by failing to leave a good and sufficient foundation for said pipe to rest upon, that the said ditch became and was dangerous to the life of persons at work in said ditch; that by reason of the negligence of said defendant in failing to comply with the terms of said contract aforesaid, one John R. Scott, an employee of the defendant Plummer, while engaged under the direction of said defendant in laying sewerpipe in the bottom of said ditch at said point on Phelps avenue, about one hundred and fifty feet east of an alley intersecting said Phelps avenue before mentioned, lost his life by reason of the side of said ditch caving in and said waterpipe falling in upon said Scott, thereby breaking said waterpipe and causing the water flowing through the same to be discharged into said sewer ditch, thereby drowning the said Scott.

"Plaintiff further avers that by reason of the death of said

Scott, so caused by the negligence of the defendant as afore-said, one Mary G. Scott, the widow of the said John R. Scott, on the first day of March, 1899, instituted suit in the cir-cuit court of Greene county, Missouri (the same being a court of general jurisdiction), against the plaintiff herein and the defendant, Enoch Plummer, in which it was alleged that she was the widow of John R. Scott, deceased, and in which said suit she demanded judgment against this plaintiff, and said defendant Plummer, in the sum of five thousand dollars in damages, claimed by reason of the death of her said husband while in the employ of said defendants as a pipelayer engaged in the construction of said sewer.

"In her said petition it was alleged that the death of said Scott was occasioned by reason of said defendant's negligence in failing to surround said sewer-ditch with necessary safe-guards, and his neglectful failure to provide for said deceased a safe and secure place in which to perform the duties of his employment, and by the negligent failure of said defendants to properly brace up and secure the walls of said trench so as to prevent the same from caving in upon the said Scott; and by reason of the negligence of said defendants in failing to brace and shore up the watermain or pipe of said waterworks company of the said city of Springfield, which said watermain was situated along and lying parallel with the sewer-ditch in which said Scott was working, said watermain being buried in the ground to a depth of four feet below the surface, and the sewer-ditch in which the said Scott was engaged in laying sewerpipe being then and there nine feet in depth, said water-pipe having been unearthed and uncovered in the digging of said sewer-trench, so that its whereabouts was well known to the said defendants; and by reason of the negligence of said defendants in failing to leave a sufficient number of bulkheads or pillars of earth in said trench, to render the same safe and

secure from caving in or falling; and that by reason of the negligent failure of the said defendant so to brace up the sides of said trench and to securely brace up and support the said waterpipe so unearthed by securely bracing and supporting the same with timbers, and by leaving sufficient number of pillars or bulkheads in said ditch, said waterpipe was left suspended in the air without support for a distance of fifty feet, and that said pipe in said unsupported condition was dangerous to one engaged in laying pipe in said ditch, and rendered the side walls of said ditch liable to cave in, and that said dangerous condition of said ditch, as well as the dangerous condition of said waterpipe, was well known to defendants therein. That the said Scott, while engaged in laying pipes in the bottom of said sewer-ditch, as directed by said defendant, lost his life by reason of the sides of said sewer-ditch caving in and by reason of said waterpipe being borne down by its own weight, and the weight of the water it contained, and by reason of the great pressure to which it was subjected; and by reason of the defendant's negligent failure to brace and support the same in a safe and secure manner, as aforesaid, the said waterpipe burst, broke, parted and fell into said sewer-trench, carrying with it a large quantity of earth from the side of said ditch, which said earth and said waterpipe fell upon said Scott and pinioned him to the bottom of said trench, and the water from out said waterpipe flowed into said sewer-trench, filling it almost instantly, thereby suffocating and drowning the said Scott.

"That the death of said Scott occurred while he was in the pursuit of his lawful employment under the defendants and without fault on his part; and that his death was occasioned solely by reason of the negligence of the said defendant to surround his work with proper safeguards, as before stated, to the damage of the said Mary G. Scott, in the sum of five

thousand dollars, for which she asked judgment.

"Plaintiff states that the venue in said case was changed to the circuit court of Polk county, Missouri, the same being a court of general jurisdiction, where both said city of Springfield and said Enoch Plummer, defendants, appeared at the trial thereof and interposed their defense thereto, that said case was tried and judgment rendered against this plaintiff on the fourth day of February, 1898, in the sum of two thousand dollars, and for cost, and in favor of said defendant, Plummer, from which said judgment in favor of said Plummer, no appeal was taken by either said Mary G. Scott nor said defendant, Plummer.

"That said cause was appealed by the plaintiff herein, the city of Springfield, Missouri, from the judgment rendered against it, to the Kansas City Court of Appeals, a court of final jurisdiction, where said judgment of said Polk county was affirmed.

"Plaintiff further states that said cause of Mary G. Scott against the city of Springfield and said Plummer was defended by the plaintiff herein with all possible care and, diligence. Plaintiff avers that a breach was made in the condition of said bond in this that said defendants herein failed and refused to hold plaintiff harmless on account of said judgment and plaintiff further states that it paid said judgment of two thousand dollars, together with interest thereon, amounting to two hundred and forty dollars, together with costs adjudged against the plaintiff herein in said cause, in the sum of one hundred and fifty dollars.

"Plaintiff further states that it has paid out in the necessary defense of said suit of Mary G. Scott against said city and said Plummer, the sum of one hundred dollars in addition to the amount for which said judgment was rendered, all of which said items of expense going to make up the sum of one

hundred dollars are shown by an itemized statement filed herein and made a part of this petition.

"And the plaintiff states that said sum of two thousand, four hundred and ninety dollars so paid out and expended as hereinbefore set forth, it has been compelled to pay out and expend solely by reason of the failure of the said defendant to comply with the terms of said contract for the construction of said sewer which said failure occasioned a breach in the condition of said bond for the faithful performance of the terms of said contract to the damage of this plaintiff in the sum of two thousand, four hundred and ninety dollars. Which said payment of said amount by this plaintiff was on account of said judgment rendered against it by reason of said defendant's failure to comply with the terms of said contract, and plaintiff further states that the defendants herein have wholly failed and refused to hold this plaintiff harmless on account thereof, and that said failure to hold this plaintiff was and is a breach in the condition of said bond. Wherefore, plaintiff prays judgment on said bond for the penalty thereof, and for damages in the sum of twenty-four hundred and ninety dollars, and for cost, and that execution be issued for said sum of twenty-four hundred and ninety dollars.

"ARCH A. JOHNSON, Attorney for Plaintiff."

To the petition Plummer and the other two defendants filed separate demurrers. The grounds common to each of the demurrers, and on which the respondents rely to support the action of the court, are as follows:

"Because said petition does not allege that the above named defendants, or either of them, ever at any time, had any notice of the institution of the said suit of Mary G. Scott against the city of Springfield, and because said petition does not allege that said city called upon said defendants, or either

of them, to settle the claim of Mary G. Scott, or to defend the said city in the said suit; and further because said petition does not allege that said defendants or either of them ever at any time had an opportunity or authority to settle said demand or to manage or control the said defense in said suit at any stage thereof.

"Because the allegations of said petition show conclusively: That every question and act of negligence and failure of duty alleged in said petition against defendants herein and against the defendant, Enoch Plummer, as having brought about or contributed to the death of the said John R. Scott, were alleged in detail and fully set forth in plaintiff's petition in the said case of Mary G. Scott against said city of Springfield and said Enoch Plummer, in which action the question as to whether the said John R. Scott came to his death by negligence of the said city of Springfield or by reason of the negligence of the said Enoch Plummer was at issue.

"Because the verdict of the jury and the final judgment rendered thereon in the circuit court of said Polk county, Missouri, exempted the said defendant, Enoch Plummer, from any charge of negligence in the premises and determined that the death of the said John R. Scott was brought about and caused by the negligence of the said city of Springfield, and not by any negligence of the said Enoch Plummer.

"Because there was no appeal taken from said judgment rendered in favor of defendant Plummer; it became final and all question as to any negligence on the part of the said Enoch Plummer as alleged in the petition in this action, or as to any liability on his part for the death of the said John R. Scott, became finally adjudicated not only as between the said Mary G. Scott and the said Enoch Plummer, but as well between the said city of Springfield and the said Enoch Plummer, who, according to the allegations of the petition in this case, were

adversary parties in the said case of Mary G. Scott against the said city of Springfield, and the said Enoch Plummer."

The court sustained the demurrers to the petition and plaintiff declining to further plead, judgment was rendered for the defendants, from which plaintiff appealed.

*Arch A. Johnson* and *Vaughan & Coltrane* for appellant.

(1) Upon this question the law is: That if the party who is ultimately liable or who will be required to respond in damages if another is beaten, has notice of such suit or connects himself with it, he is concluded by the judgment, but if he has no notice or is not connected with the suit, then the judgment as to him (in this case Plummer and on account of their relation to him, likewise his securities) has only prima facie or presumptive force. Railroad Co. v. Southern Railway News Co., 151 Mo. 373; City of Memphis v. Miller, 78 Mo. App. 67; Strong v. Ins. Co., 62 Mo. 289; Wheelock v. Overshiner, 110 Mo. 101; Strong v. Ins. Co., 4 Mo. App. 27; Gantt v. Ins. Co., 68 Mo. 503. (2) The other ground of demurrer, common to both demurrers, is, that the judgment in the Scott case is a final and binding adjudication of all questions as to negligence or liability to the city in this action on account of Scott's death. (3) Upon what particular ground the demurrers were sustained appellant is not advised, but it certainly could not have been on account of the misjoinder relied on by respondent Plummer. It was not for him to plead such misjoinder, but those who were improperly joined in the suit with him, who, we understand from respondent's theories, were the other defendants. Plummer could not be injured by this misjoinder. Boggess v. Boggess, 127 Mo. 305; Alnutt v. Leper, 48 Mo. 319.

*Barbour & McDavid* for respondents.

(1)    The court properly sustained the defendant's demurrer.    The petition fails to state any cause of action either against Plummer or against his bondsmen.    No notice to any of the defendants is alleged, and the petition clearly shows that the said city and Plummer were adversary parties in the Scott case and that the question of whose negligence caused Scott's death was finally adjudicated.    (2)    Before Plummer could be held to respond to the city in this case the city must show that it gave Plummer notice that it was sued by Mrs. Scott; and further the city must have requested Plummer to defend it (not himself) against such suit and that it would hold him liable in said action as against the city.    And still further, the city must have placed its defense under the management and control of Plummer if he was to be held liable for the damages that Mrs. Scott might recover against the city.    The fact that Plummer was also sued and defended himself (not the city) does not avoid the necessity of notice from the city and does not relieve the city from placing its defense under the control and management of Plummer.    The allegation of appellant's petition is "plaintiff further states that said cause of Mary G. Scott against the city of Springfield and said Plummer was defended by the plaintiff herein with all possible care and diligence."    (3)    No notice was given to Plummer.    No consultation was ever held with him as to the management or control of the city's defense.    No consultation was had with him as to whether case should be settled, compromised or defended. He was not consulted about the employment of counsel, or about the management of the case in any particular, or at any time.    Whittaker v. McCormick, 6 Mo. App. 114; Collins v. Baker, 6 Mo. App. 588; Koontz v. Kaufman, 31 Mo. App. 397; City of St. Joseph v. Railway, 116 Mo. 636; Gantt v. Ins. Co., 68 Mo. 503.

BLAND, P. J.—The theory of law upon which the court sustained the demurrer, if correctly assumed by respondents in their brief, was that the Scott judgment rendered by the Polk Circuit Court against the City of Springfield, is *res judicata* as between appellant and respondent, both being parties to this suit, which resulted in the judgment in favor of Plummer and against appellant. If they were adversary parties, as they are assumed to have been by the respondent, then that the judgment would be a complete and effectual bar to appellant's right to recover in this action admits of no doubt, irrespective of the fact that they were co-defendants, for an issue once tried on its merits and reduced to a final judgment, however raised, precludes the retrial of the same issue between the same parties in any other form of action. Wiggins v. St. Louis, 135 Mo. l. c. 569; Young v. Byrd, 124 Mo. 590; State ex rel. v. Branch, 134 Mo. 592; Nave v. Adams, 107 Mo. l. c. 420; Edgell v. Sigerson, 26 Mo. 583; Nail Co. v. Button Co., 74 Fed. Rep. 864; Stone v. U. S., 64 Fed. Rep. 667; Martin v. Evans, 85 Md. 8. But there is no allegation in the petition by which it is stated or from which the inference can be fairly drawn, that in the trial of the Scott case, appellant and Plummer assumed, or occupied adverse positions in the trial of that suit. The petition alleges that Mrs. Scott, in her petition alleged that the death of her husband was occasioned by the negligence of the defendants in failing to surround the sewer-ditch (in which her husband met his death) with necessary safeguards, etc. The negligence alleged by her was the joint negligence of both the city and of Plummer. From the opinion of the Kansas City Court of Appeals, delivered on the appeal of the case (81 Mo. App. l. c. 319), it appears that one of the defenses made and relied on by the city of Springfield, was that the deceased, with full knowledge of the condition of

Vol 89 app—34

the sewer-ditch and waterpipes, assumed the risk of working at the place where he met his death. Whether Plummer joined the city in this or in any other defense made by it, or sought to exculpate himself by casting the blame on the city's engineer, is not to be ascertained by anything that is to be found in the petition. For the purpose of passing on the demurrer the court could not look beyond the allegations of the petition, to ascertain that the city and Plummer, either by their separate answers or by their conduct at the trial, took such positions as to make them adversaries.

The Polk county judgment is conclusive of all the issues involved in the pleadings in that case, and is conclusive against the city of Springfield that Scott came to his death by reason of its negligence, and is conclusive as between Mrs. Scott and Plummer that Scott did not come to his death through the negligence of Plummer, but it is not conclusive of the latter fact as between Plummer and the city, who were co-defendants in the suit, unless that issue was raised by them in some manner at the trial. It is not disclosed by the petition on what rulings of the court Plummer escaped liability, and it is not a matter about which we may venture to guess or make surmises. The full record of the trial can only disclose the history of that trial and from it, and from it only, can be ascertained whether Plummer and the city joined in a common defense, or became adversary parties. If the defense was a common one, and in no respect adverse, it is very certain the judgment furnishes the respondents no bar to a recovery in this suit. O'Rourke v. Railway Co., 142 Mo. 342; State Bank v. Bartlett, 114 Mo. 276; McMahan v. Geizer, 73 Mo. 145. "In order," says the Federal Supreme Court in Hughes v. United States, 4 Wall. 232, "that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same

in both cases," and must be determined on its merits. In Henry v. Wood, 77 Mo. 280, it is said, "The fundamental rule on this subject is, that a matter once adjudicated by a court of competent jurisdiction may be invoked as an estoppel in any collateral suit, in any court of law or equity, or in admiralty where the same parties or their privies, or one of the parties and the privy or privies of the other allege anything contradictory to it." Parties are defined by Professor Greenleaf (1 Greenl. Ev., sec. 535) to be: "All persons having a right to control the proceedings, to make defense, to produce or examine witnesses, and to appeal from the decision if an appeal lies."

Mr. Freeman in his work on Judgments (Vol. 1, sec. 158) says, "Parties to a judgment are not bound by it in a subsequent controversy between each other, unless they were adversary parties in the original action," that "whenever the rules of practice permit defendants to make issues among themselves and to have such issues determined and relief granted, thereupon they become adversary parties upon interposing pleadings setting forth their conflicting interest and calling for the granting of appropriate relief, and a judgment or decree determining such interest and granting or denying such relief is as conclusive upon them as if they had been plaintiff and defendant instead of co-defendants." Under our practice act, Plummer and the city of Springfield, as codefendants in the Scott suit, might have set forth conflicting interest and called for appropriate relief, but it does not appear on the face of the petition that they did this, neither does it appear from the petition that the point in controversy in this suit, to-wit, that Scott came to his death by the sole negligence of the city of Springfield and not by the negligence of Plummer, was adjudicated as between them as co-defendants. We, therefore, hold that the petition does not state facts from which

it appears that the city of Springfield is estopped by the Polk county judgment to prosecute this suit on Plummer's bond.

II.    It is contended by respondents that Plummer had no notice of the Scott suit, that he was not consulted in respect to the suit nor allowed to control the defense or to select counsel to make a defense, and for these reasons the judgment is not conclusive against them.    To say that Plummer had no notice of the suit would be to contradict what is alleged to be in the record of the cause, to-wit, that Plummer was sued as a co-defendant, appeared and defended the suit.    Notice is implied where one answerable over, had actual knowledge of the suit and participated in its defense.    Plumb v. Goodnow, 123 U. S. 560; Davis v. Smith, 79 Me. 351; City of Memphis v. Miller, 78 Mo. App. l. c. 70.    To what extent, if at all, he was allowed to employ counsel and manage the defense of the case, does not appear from the petition.    Unless he had this opportunity, the notice of the pendency of the suit placed him in no better position in respect to its defense than if he had had no notice at all, and the judgment is not conclusive against him.    Garrison v. Babbage Transportation Co., 94 Mo. 130; City of St. Joseph v. Railway Co., 116 Mo. 636; K. C., M. & B. R. R. Co. v. Southern R'y News Co., 151 Mo. l. c. 390.

III    It is alleged in the petition that both the city of Springfield and Plummer appeared in the Polk Circuit Court and defended the Scott suit.    If they made a common defense and were harmonious in the conduct of that defense on the trial, respondents are estopped, according to all the authorities, to deny any of the issues that were adjudicated by the trial and judgment, and the only question open to them as a defense is, whether the negligence by which Scott came to his death is attributable to Plummer or to the city of Springfield? On the other hand, if the city of Springfield refused to cooperate with Plummer in the defense of the cause, and pursued

its own course in making its defense, without consulting him, the respondents are not estopped by the judgment. But (unless the defenses were adversary), it does not follow that because respondents are not bound by the judgment, that they are relieved of all liability on their bond and are not yet bound to indemnify the appellant for the actual damages it has sustained on account of Plummer's negligence, if any. For it is not a prerequisite to appellant's right of action that respondents should be conclusively bound by the judgment. If not bound, then for this reason the burden of appellant to make out its case is made more onerous and the scope of the defense is broadened. Stewart v. Thomas, 45 Mo. 42; Wheelock v. Overshiner, 110 Mo. 100; K. C., M. & B. R. R. Co. v. Southern R'y News Co., 151 Mo. 373. If respondents are not bound by the judgment it is nevertheless admissible to show the amount of the judgment and to show that appellant has paid it. Picot v. Signiago, 27 Mo. 125. To support the demurrer the learned counsel for respondents has brought in extrinsic facts—assumption of facts not alleged in the petition. Such a demurrer in equity practice is denominated a speaking demurrer and is universally condemned. The facts urged in support of the demurrer can only be brought to the attention of the court by a plea in bar—or plea setting up an estoppel by the Scott judgment. We think the petition states a good cause of action and reverse the judgment and remand the cause with directions to the circuit court to overrule the demurrer, with leave to respondents to further plead if they are so advised.

Judge *Bond* concurs; Judge *Goode* not sitting.