## ATCHISON, T. & S. F. RY. C. v. A. B. C. FIREPROOF WAREHOUSE CO. (two cases).

Nos. 10406, 10483.

Circuit Court of Appeals, Eighth Circuit.

March 3, 1936.

Rehearing Denied April 3, 1936.

George J. Mersereau and Dean Wood, both of Kansas City, Mo. (Cyrus Crane and John N. Monteith, both of Kansas City, Mo., on the brief), for appellant.

William G. Holt, of Kansas City, Mo., for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

On motion to strike bill of exceptions:

The judgment sought to be reviewed by the appeal in this case was rendered March 23, 1934, the motion for new trial being overruled April 14, 1934, during the November, 1933, term of the court. Appeal was allowed July 13, 1934, and on the same day time for filing bill of exceptions was extended to August 20, 1934. Thereafter, ten more orders were made, each one of them being within the extension period and each extending the time to file bill of exceptions for a period not exceeding forty days from the date of the order and the bill was filed and settled within the time allowed by the last order. The motion to strike the bill of exceptions is upon two grounds: (1) That the orders extending time to file the bill do not provide that "the judgment term" shall be extended, or equivalent phraseology; (2) that one of the extensions for a period of two days was made by Judge Otis during the absence from the District of Judge Reeves, who tried the case.

(1) We are in accord with the opinion expressed by the Circuit Court of Appeals of the Fourth Circuit in United States v. Tucker, 65 F.(2d) 661, 662. "If the order extends the time for settling the bill of exceptions, it extends the term for that purpose; and vice versa." As used in the extension orders the phrase "the time for filing bill of exceptions" was equivalent to and meant the same thing as though all the words "time for preparing, serving, presenting, settling, allowing and filing the bill of exceptions" had been included. The orders clearly reflect the intention of the court and were sufficient in form. United States v. Bass (C.C.A.) 64 F.(2d) 467.

(2) Judge Otis has certified that he was authorized by Judge Reeves to make necessary orders during the absence of the latter from the District and that his order extending time for filing the bill of exceptions in this case was made, during the absence of Judge Reeves, pursuant to that authority. Though we have held that the judge who tried the case should settle the bill of exceptions [Kava **v.**

United States (C.C.A.) 61 F.(2d) 397], we find no reason to hold that another judge may not, by arrangement with the associate judge, grant a short extension of time, as was done in this case. Such practice is covered by rule of court in New York and approved by the judges. United States v. Stephanidis (D.C.) 46 F.(2d) 691; Imperial Bev. Corp. v. Charles E. Hires Co. (D.C.) 55 F.(2d) 405. Neither precedent nor reasons that appeal to us have been shown to discredit it.

Motion to strike the bill of exceptions denied.

This lawsuit grows out of the accidental burning of three automobiles in a boxcar of the Santa Fé Railway Company standing at its loading dock in Kansas City on the evening of October 26, 1920. Each of the three several owners of the automobiles had contracted with the A. B. C. Warehouse Company to have his car shipped to California, and the warehouse company had placed the three cars in the boxcar furnished by the Santa Fé Railway Company for the shipment. An attempt was made to drain the gasoline out of the cars after dark by the light of an open flame lantern, the fumes ignited and the cars were destroyed. After the fire, each of the owners brought his action in the state court to recover the value of his car at the time of loss, joining both the warehouse company and the Santa Fé Railway Company in his suit.

While the litigation was pending and in October, 1922, the A. B. C. Warehouse Company brought this action at law against the Santa Fé Railway Company. The warehouse company alleged in its petition:

That it had delivered the three automobiles to the railway company by loading the same into a freight car furnished by the railway company at its loading dock in Kansas City to be transported to Los Angeles and there delivered to the plaintiff's agent; that the railway company accepted the property so loaded in the car and undertook to transport and deliver it as a common carrier for hire in consideration of the lawful freight charges to be paid by the warehouse company; that the railway company at the same time issued its bill of lading for said property, which bill of lading has always been in the possession of the warehouse company and belongs to it; that the railway company failed to deliver the property notwithstanding demand duly made for the property and for its value, which was alleged to be $16,323.50.

The prayer was for judgment against the railway company in that amount with lawful interest from the date of the loading.

The case was removed to the federal court on the ground of diversity of citizenship and on November 19, 1930, eight years after the commencement of the action, the railway company filed its second amended answer, in which it made general denial, and also pleaded that the damages for which the action was brought "were directly caused and contributed to by plaintiff's own careless and negligent acts," wherefore, it prayed to be dismissed with costs. It then alleged in separate paragraphs III, IV, V, and VI, as separate defenses, that the three suits of the three owners of the automobiles brought against the warehouse company and the railway company had been prosecuted to final judgments in the state courts and that the judgment in each case had gone against the warehouse company and that no recovery had been allowed against the railway company in either of the actions. The proceedings claimed to have been had in each of the three suits were described, and it was alleged that the final judgment in each of the cases was a "final adjudication of the lack of the right of the (warehouse company) to recover against the railway company herein and that upon such final judgments all of the issues in this case as applied to (the automobiles in question) became * * * res adjudicata, and by reason of the premises the plaintiff in this cause is not entitled to recover any judgment whatever against the defendant herein."

A demurrer to the special defense of res adjudicata was filed for the warehouse company, but it was not pressed. Instead of pressing the demurrer, the warehouse company joined issue upon the special defenses by a reply in which it denied each and every allegation contained in the paragraphs III, IV, V, and VI. Pursuant to stipulation of the parties filed December 4, 1930, it was ordered that the issues set forth in paragraphs III, IV, V, and VI be tried to the court and not to the jury. Separate trial of the special issues was had to the court on December 4, 1930, and on such trial the railway company introduced in evidence, over objection, the records of the litigation and

the evidence which had been taken in the three suits of the automobile owners against the railway and warehouse companies referred to in paragraphs III, IV, V, and VI of the answer. The warehouse company thereupon orally demurred to the evidence so introduced, and the court, having taken the matter under advisement, decided the separate issues against the railway company on June 16, 1931. An entry of that date recites that the court had on that day filed its memorandum opinion "overruling the defendant's plea of estoppel and allowing the defendant exceptions." But, through inadvertence, no formal order was entered. The inadvertence was corrected by the trial court on March 30, 1934, by directing an order nunc pro tunc as of the date June 16, 1931, to be entered. The actual spreading of the order upon the records was delayed on account of unsuccessful motions and proceedings taken by the railway company until July 1, 1935, at which time it was ordered to be and was duly recorded.

The nunc pro tunc order recited the proceedings that had been had on the trial to the court without a jury of the special issues presented by paragraphs III, IV, V, and VI of the railway company's answer, and "adjudged and decreed that the issue of estoppel or res adjudicata set up by the defendant (railway company) be found against it and that the plaintiff recover the costs of the hearing."

The railway company complained in the trial court and also complains in this court because the judgment entry covering the court's decision on the special issues was made nunc pro tunc, but such complaints are without merit. When the trial court's attention was called to the fact that there had been an inadvertent omission to enter an order which the trial court had decided upon and announced on June 16, 1931, the clear duty of the court was to enter it nunc pro tunc as of that date.

The railway company has filed a separate appeal from the order which was made by the trial court on March 30, 1934, nunc pro tunc as of the 16th of June, 1931. Such appeal is No. 10483 (consolidated for submission with No. 10406), but it is clear that the order so attempted to be appealed from was not an appealable order. This lawsuit was brought by the warehouse company against the railway company to recover a money judgment for

the value of the automobiles covered by the bill of lading. The ruling on the special defenses of res adjudicata or estoppel did not determine whether or not the railway company owed the warehouse company the amount sued for, or any amount. As the order of June 16, 1931, was merely an interlocutory order and not appealable, the attempted appeal from that order, No. 10483, should be dismissed. Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L. Ed. 616; Rexford v. Brunswick-Balke Collender Co., 228 U.S. 339, 33 S.Ct. 515, 57 L.Ed. 864; Pacific Mutual Life Ins. Co. v. Andrews (C.C.A.8) 73 F.(2d) 839, and numerous cases therein cited; Commonwealth of Pennsylvania, etc., v. Sterrett et al. (C.C.A.) 66 F.(2d) 881; Cory Bros. & Co., Ltd., v. United States (C.C.A.) 47 F.(2d) 607.

In January of 1934 the railway company filed a third amended answer to the petition of the warehouse company in which it made general denial of the allegations of the petition, and in paragraph II, pleaded:

"Further answering said petition defendant states that the damages alleged therein were directly caused or contributed to by the plaintiff's own negligent acts in that said automobiles alleged by plaintiff to have been delivered to this defendant for interstate shipment, which delivery defendant denies, were in fact destroyed by fire caused by the negligence of plaintiff's servants in using a lighted lantern while draining gasoline from the said automobiles to prepare them for shipment.

"Wherefore, having fully answered, defendant prays to be discharged with its costs."

It also presented again the same special defense of res adjudicata in the same words as in its second amended answer. A motion to strike the special defense of res adjudicata out of the answer on the ground that the special defense had already been ruled on by the court was at first sustained, but afterwards, on March 21, 1934, at the conclusion of the testimony on the trial of the case, the court ruled as follows: "Heretofore a motion to strike portions of the Third Amended Answer filed by the defendant was sustained. The portion of the Third Amended Answer so stricken, being paragraphs 3, 4, 5 and 6, was tantamount to a plea of res adjudicata. To the end that the questions in-

volved might be preserved in this trial, and in the present Bill of Exceptions, if necessary, the order striking such portions of said Amended Answer is now vacated and the matters raised by the said Amended Answer will be treated as if they were still in the Third Amended Answer and the record will so show. The Court is of the opinion that such plea was not a valid plea; that there is no res adjudicata in the case and therefore objection to all testimony pertaining thereto has been sustained."

Afterwards, on March 30, 1934, a formal journal entry was made by the trial court, and it was ordered: "It is therefore now considered, ordered, adjudged and decreed by the Court that said plaintiff's motion to strike said paragraphs marked III, IV, V and VI from said defendant's Third Amended Answer be, and the same is now reconsidered, and said plaintiff's objections to the introduction of said evidence are now sustained, and said plaintiff's said motion to strike is now sustained, and it is hereby ordered that said paragraphs marked III, IV, V and VI be, and the same are hereby stricken from said defendant's said Third Amended Answer, to all of which said defendant excepts."

On March 19, 1934, the case went to trial to the court and jury and the witnesses who had testified in four previous jury trials again narrated the facts concerning the loading of the automobiles into the boxcar, the issuance of the bill of lading to the warehouse company and the destruction of the automobiles by fire from the open flame lantern while the men were draining the gasoline from the automobiles. In Ormsby v. A. B. C. Fireproof Warehouse Co., 214 Mo.App. 336, 253 S. W. 491, and Train v. A., T. & S. F. Ry. Co., 214 Mo.App. 354, 253 S.W. 497, the Kansas City Court of Appeals has detailed the minutiae of the testimony as it was developed in two of the former trials, and though there were variances on the trial in this case, as would be inevitable after repeated trials, it is not necessary to restate the evidence. On March 23, 1934, the jury returned a verdict in favor of the warehouse company and against the railway company in the total sum of $19,069.-32, principal and interest. Judgment having been entered on the verdict, the railway company appeals.

It contends that the trial court was in error in refusing to decide that the claims presented and put in issue by the warehouse company in this case had been adjudicated against the warehouse company and in favor of the railway company in the litigation in the state courts and had become res adjudicata. We first consider whether that matter is properly before this court for review.

■ It appears that pursuant to leave granted by this court the appellant railway company has amended its assignments of error by adding an assignment (33) to the effect that the trial court erred in ruling for the warehouse company and against the railway company on the merits of the affirmative defense of res adjudicata in the order entered nunc pro tunc as of June 16, 1931.

The statute of Missouri contemplates that where there are several issues in a case there may be separate trials thereon at different terms of court, but, "The judgment upon each separate finding shall await the trial of all the issues." Missouri Revised Statutes, 1929, § 951, vol. 1, p. 452 (Mo.St.Ann. § 951, p. 1223). As the decision of June 16, 1931, upon the separate issue of res adjudicata was interlocutory and could not be reviewed in this court until after the final judgment in the case (March 23, 1934), and the appeal was allowed within time thereafter, the assignment of error was not too late. 28 U.S. C.A. § 724; Rev.Stat.Mo.1929, c. 5, § 951 (Mo.St.Ann. § 951, p. 1223); Stone v. Perkins, 217 Mo. 586, 117 S.W. 717; Courtney v. Blackwell, 150 Mo. 245, 51 S.W. 668.

■ The assignment is in proper form and requires review of the order of June 16, 1931, by this court if the evidence on which the order was based has been properly brought up. The rule of the District Court for the Western Division of the Western District of Missouri contemplates that the time within which a bill of exceptions shall be filed shall not begin to run until after appeal has been allowed, so the appellant was not required to obtain certification of the evidence on which the plea of res adjudicata was heard until after the appeal was allowed, July 30, 1934.

■ The order of June 16, 1931, describes the testimony upon which it was made, namely, "The evidence and records of the

Circuit Court of Jackson County, Missouri, and of the Kansas City Court of Appeals of Missouri, and of the Supreme Court of Missouri, of the actions referred to in said second amended answer." Such evidence was not only introduced on the trial of the issue of res adjudicata, but on the trial of the case the same records were again offered in evidence by the railway company. They were excluded because the trial court held that it had ruled upon the effect of the evidence in its order of June 16, 1931. The records were identified as Exhibits A, C, and D, and upon approving the bill of exceptions (which we elsewhere find to have been done within time), the trial court made an order concerning those exhibits, as follows:

"It appearing to the Court that in this cause it is necessary and proper in the opinion of the Court that certain original papers and documents should be inspected in the Circuit Court of Appeals upon writ of error by said Court:

"It is, therefore, ordered that the following papers; to-wit, defendant's Exhibits A, C and D, referred to and described in the bill of exceptions be transmitted by the Clerk of this Court to the Clerk of the Circuit Court of Appeals at St. Louis, Missouri, and returned after the disposition of the appeal to the Clerk of this Court.

"Dated at Kansas City, Missouri, this 1st day of July, 1935."

Thereafter, on application duly made to it, this court excused the appellant from incorporating the Exhibits A, C, and D, "which constituted printed records of trial in state courts" in full in the bill of exceptions, or printing them in the record on appeal. They were duly lodged with the clerk of this court by the clerk of the District Court, and we find that the evidence upon which the order of June 16, 1931, was made, and the exception taken to the sufficiency of the evidence, are properly before us for consideration. We will, therefore, review the order of June 16, 1931, and inquire whether the issues presented by the warehouse company against the railway company in this case had been settled by prior adjudication and had become res adjudicata against the warehouse company before June 16, 1931.

The effect which must be given to the prior adjudications of the state courts is a matter of state law. Roche v. Mc-Donald, 275 U.S. 449, 48 S.Ct. 142, 72 L. Ed. 365, 53 A.L.R. 1141; Union & Planters' Bank v. Memphis, 189 U.S. 71, 75, 23 S.Ct. 604, 47 L.Ed. 712; Parker Bros. v. Fagan (C.C.A.5) 68 F.(2d) 616, 617; The No. 34 (C.C.A.2) 25 F.(2d) 602, 604. And the law of Missouri as to the effect to be given prior adjudication is in accord with the general law as it has been stated by this court. In National Bank of Commerce v. Maryland Casualty Company, 307 Mo. 417, loc. cit. 435, 270 S.W. 691, 696, the Supreme Court of Missouri quoted from and referred to the decision of this court in Pierce v. National Bank, 268 F. 487, and held the general rule to be:

"First. Where the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question and issue which was or might have been presented and determined in the first suit. (Citing cases.)

"Second. When the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive relative to other matters which might have been, but were not, litigated or decided. (Citing cases.)

"Third. Where the record is such that there is or may be a material issue, question, or matter in the second suit upon a different cause of action which may not have been raised, litigated or decided in the former action, the judgment therein does not constitute an estoppel from litigating that issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the facts that the issue, question, or matter in dispute was actually and necessarily litigated and determined in the former action. (Citing cases.)

"Fourth. The test of the identity of the causes of action is the identity of the facts essential to maintain them. (Citing cases.)"

With these considerations in mind, we compare the issues that were presented and adjudicated in the state court litigation with the issues involved here.

Turning first to the case which was brought by Robert L. Train, owner of the

Franklin automobile, against the Santa Fé Railway Company and the A. B. C. Warehouse Company in the circuit court of Jackson county, Mo.:

Train alleged in his petition that he had delivered his automobile to the warehouse company to be forwarded from Kansas City to Los Angeles; that the warehouse company accepted it and undertook to and did deliver it to the Santa Fé Railway Company; that the railway company accepted it as a common carrier for hire and undertook to carry and deliver it at Los Angeles; that the defendants, their agents and employees, after placing the automobile in a boxcar entered the car for the purpose of preparing the automobile for shipment, negligently carried in a lighted lantern and negligently undertook to drain and remove the gasoline from one or more of the automobiles in the car; whereby the fumes ignited and the car was burned; that it was of the value of $6,465; for which sum judgment was prayed against both defendants.

The warehouse company answered that it had received Train's automobile for the purpose of delivering the same to a railroad company to be carried to Los Angeles on terms prescribed in the railroad company's uniform bill of lading, under a contract with Train which provided that in receiving the automobile the warehouse company was acting only as agent for the owner and not as a common carrier, and that the responsibility of the warehouse company should cease on delivery of the automobile to the railroad company; that it had delivered the automobile to the Santa Fé Railway Company and that the Santa Fé had issued and delivered its straight bill of lading to the warehouse company therefor; that thereafter while the automobile was in the exclusive control and custody of the Santa Fé in its boxcar, the boxcar caught fire without fault of the warehouse company, and the automobile was damaged; it was not delivered to the warehouse company, but was kept by the railway company and converted to its use; the warehouse company denied that any of its employees carried a lantern into the freight car or had one there; it alleged that if any person did carry a lighted lantern into the freight car or undertook to drain gasoline from the automobiles such persons were not engaged in any business being then or there carried on by the warehouse company;

that if Train owned the automobile he had been paid for any loss he sustained; that the car was not worth $6,465; general denial.

The Santa Fé Railway Company answered that the automobile had not been delivered to it at the time of the fire, but was still in the hands of the warehouse company and its servants; that the damage to the automobile was caused by acts of the shipper or its servants in draining or attempting to drain gasoline from the automobile, and in taking a lighted lantern into the railroad car while they were draining or attempting to drain gasoline from said automobile; general denial.

Train replied by general denial.

It will be observed as to the position of the parties in the Train Case that the warehouse company was claiming that it had made delivery of the automobiles to the railway company; that the railway company had accepted them, had undertaken their transportation, and had issued its straight bill of lading therefor. The plaintiff Train put himself in privity with the warehouse company as to these claims and sought recovery against the railway company by virtue of the same alleged delivery to and acceptance of the cars by the railway company and the same "undertaking to transport as a common carrier for hire." He made the additional charge against the warehouse company that it was negligent as well as the railway company in causing the destruction of the automobile. The railway company set up the same issue against both of them; that it had not accepted the cars for transportation and that the cars had been damaged by the shipper's negligence.

On the trial of the case in the Jackson county circuit court the contract between Train and the warehouse company was received in evidence, as it was on the trial of this case; likewise the same bill of lading issued by the railway company and the same witnesses were heard as to the circumstances surrounding the loading of the automobiles, the issuance of the bill of lading and the attempted draining of the gasoline by the light of the lantern whose flame ignited the gasoline fumes.

The evidence on the trial of that case showed without contradiction, as it does in this case, that the employees of the warehouse company who loaded the automobiles into the Santa Fé boxcar were in

the Santa Fé boxcar attempting to drain the gasoline out of the automobiles by the light of an open flame lantern when the fumes ignited and the automobiles were burned. But the warehouse company was contending, as it does here, that its employees were after working hours trying to get the gasoline for themselves to sell it or give it away to their friends, and were not then engaged in any service for their master. It requested the court to instruct the jury that if the jury believed that the employees were draining the gasoline for their own purposes without authorization after the loading had been completed and the automobiles had been accepted for shipment by the Santa Fé, then the warehouse company would not be liable. The court so instructed, and the jury, by its general verdict against both the warehouse company and the railway company,, must be deemed to have found this issue against the warehouse company. Judgment having been rendered on the verdict, appeals were taken to the Kansas City Court of Appeals.

The opinion of that court (Train v. A., T. & S. F. Ry. Co., 214 Mo.App. 354, 253 S.W. 497, 503) leaves no doubt that the court gave full consideration to all questions involved in the case and upon such consideration it held that the jury was justified in finding that the employees of the warehouse company who were draining the gasoline from the automobiles by the light of the lantern were seeking to accomplish the work of their master, the warehouse company, in getting the automobiles ready for shipment, and that the warehouse company was liable for the burning. On the other hand, the court, upon similarly elaborate consideration, found that the work of loading and preparing the automobiles for shipment was solely that of the warehouse company and that as between the owner, Train, and the railway company, the warehouse company was plaintiff's agent.

"It was the shipper named in the bill of lading.

"We do not mean to say that plaintiff could not sue for this reason. No doubt he could, even if the bill of lading was in the name of the warehouse company, since it was a contract made for plaintiff's benefit. Bushnell v. Wabash Ry. Co., 118 Mo.App. 618, 624, 94 S.W. 1001. But the point here made is that plaintiff cannot recover against the rail-way company if the loss was caused by the negligence of plaintiff's agent, unless the railway company also negligently participated in the act causing the destruction."

The court concluded that: "The draining of the gasoline from the automobile was not required by any rule or regulation of the railway company, still it was a matter the warehouse company might very well do as a precaution it deemed necessary to be taken for the safety of the shipment, or because the owner of the automobile desired it to be done. And in this case there is evidence that, when plaintiff's automobile was delivered to the warehouse company at the loading dock, a desire was expressed to have said automobile drained. Consequently anything done by the warehouse. company's employees in and about the preparation of the automobile, even though not required by the railway company, could be regarded by the railway employees, in the absence of notice to the contrary, as being within the authority of those who were doing it."

The court decided that the jury was justified in fixing the negligence which caused the damage to the automobiles upon the warehouse company, and that as a matter of law the railway company could not be held. There was judgment against the warehouse company and in favor of the railway company accordingly.

A. B. Ormsby was the owner of another of the three automobiles loaded into the Santa Fé boxcar and burned on October 26, 1920. Ormsby's petition was against both the warehouse company and the railway company in the Jackson county circuit court and was no different in substance from the petition filed by Train, and in the answer filed by the warehouse company it reiterated the same claims it had set up in the suit brought by Train. Particularly it alleged that it had delivered the automobile to the railway company; that the railway company had accepted it for transportation and had issued its straight bill of lading therefor and that if any persons undertook to drain off the gasoline from the automobiles in the car by the light of an open flame lantern and so negligently caused damage, the persons were not acting within the scope of any employment for the warehouse company at the time. The answer of the railway company was like its answer in the Train Case, and charged that the loss was due to the shipper's negligence. On the trial,

March 3, 1922, the contract between the warehouse company and the automobile owner was introduced and the bill of lading, and the witnesses narrated all the circumstances surrounding the loading and burning of the automobiles substantially as in the Train Case. At the conclusion of all the testimony, Ormsby dismissed his case as to the railway company and proceeded as to the warehouse company. The court instructed the jury that if they believed that the servants of the warehouse company, while acting within the scope of their employment, negligently drained out gasoline while an open lighted lantern was in close proximity and so caused the damage, then the warehouse company would be liable. The warehouse company requested the court to instruct that the jury should inquire first whether the servants were engaged in serving the master, and that if the act was done while the servants were at liberty from their service and pursuing their own ends exclusively, the master was not then responsible, even though the injuries complained of could not have been committed but by the facilities afforded by the servants' relation to their master. The requested instruction was given. The jury found against the warehouse company and on appeal the Kansas City Court of Appeals reviewed the evidence in great detail. It concluded that the jury was justified in finding that the servants of the warehouse company were acting within the scope of their employment in draining the gasoline from the automobiles and were negligent in bringing the open flame lantern into the boxcar and that such negligence caused the damage.

The third automobile owner, M. M. Stevenson, recovered a judgment for the loss of his automobile against both the railway company and the warehouse company, but the judgment was reversed on a matter of procedure, and he ultimately recovered upon an amended petition against the warehouse company alone. Upon appeal from that judgment the court of appeals said: "The facts surrounding the destruction of the automobile in question are fully set forth in the case of Ormsby v. A. B. C. Fireproof Warehouse Co., 214 Mo.App. 336, 253 S.W. 491, and Train v. A., T. & S. F. Ry. Co., 214 Mo.App. 354, 253 S.W. 497, and it is not necessary for us to restate them. It is sufficient for us to say that plaintiff was the owner of the Haynes automobile mentioned in the opin-

ion of those cases." Stevenson v. A. B. C. Fireproof Warehouse Co. (Mo.App.) 6 S.W.(2d) 676.

From this brief review of the long litigation in the state courts, it is evident that throughout its course the owners of the automobiles asserted the agency of the warehouse company to act for their benefit in making delivery of the automobiles to the railroad company. That the warehouse company always pleaded the bill of lading issued to it by the railway company and claimed that it had discharged its duty as agent to make delivery to the railway company and that the railway company had accepted the property for transportation as a common carrier for hire and that the destruction of the property had resulted from acts for which the railway company alone was liable. The railway company always defended on the ground that the property was damaged by the shipper's negligence while it was being prepared for shipment.

It may be assumed for the purposes of this case that the judgments in the two cases of Ormsby and Stevenson in which the railway company was released by voluntary dismissal before adjudication are not binding upon the warehouse company in this case. The history is relevant, however, to show that there was no adjudication at variance with the adjudication in Train's Case.

In Train's Case the railway company's claim that the automobiles were damaged by the shipper's negligence while being prepared for shipment was brought directly in issue by the pleadings, the requests for instructions to the jury and the verdict responsive to the instructions given and by the subsequent proceedings in the appellate court. The claim was thoroughly threshed out and decided by the court in favor of the railway company and against the plaintiff Train and the warehouse company. That company was adjudged to be solely liable for the whole loss on full consideration of all its claims to the contrary.

It is contended for the railway company that the Train suit ought to be regarded as having been brought upon the same cause of action as the warehouse company's present suit on the bill of lading. It is pointed out that although the plaintiff Train did not set up the bill of lading in words and figures in his petition, he did allege delivery of his property

made by the warehouse company to the railway company for transportation in his behalf, acceptance thereof, and that the railway company "undertook to carry" the property. The warehouse company in its pleading further identified what the railway company's undertaking was by pleading the bill of lading that had been issued and on the trial the bill of lading was received in evidence and considered. Train's petition differed from the petition filed herein by the warehouse company in that in Train's petition there was a specific charge that his property was destroyed by the negligence of the railway company. The petition of the warehouse company in this case is silent as to what caused the loss.

It is held in Missouri that a suit for damages for freight loss may be maintained by a shipper upon his bill of lading without alleging negligence as the cause of loss, but if the shipper suing the railroad company for loss of the freight pleads that it was lost by certain negligence, then he must prove that the property was lost by that negligence. State ex rel. v. Trimble (Mo.Sup.) 257 S.W. 104.

Accordingly, when a shipper sues a railroad company for loss (or nondelivery) of freight as the warehouse company has done in this case, without specifying any particular negligence as the cause of loss, there might be difficulty in fully identifying his cause of action so as to make comparison with the cause of action in another suit from an examination of the petition alone. On the other hand, when the property has actually been lost, then when the issue is made up against such a petition by the railroad's plea of shipper's negligence as the cause of loss, the shipper must meet that charge. Under the Practice Act of Missouri, section 779, Rev. Statutes of Mo.1929 (Mo.St.Ann. § 779, p. 1030), he is required to reply to such an answer or be nonsuited, as it presents new matter that would be a complete defense. When the shipper makes his reply the true nature of the cause of action is as apparent as though the plaintiff had pleaded loss of the freight from causes for which the railroad company was responsible in the first place.

It so happens in this case that the warehouse company did not formally file its reply to the railroad company's an-

swer that the loss was caused by shipper's negligence, but it is treated as though it had done so under the practice sanctioned in Missouri. Citations under section 779 Rev.Statutes of Missouri, 1929, supra. Its position on the trial was that the automobiles had been delivered to and accepted by the railway company and had been destroyed by negligence for which the railway company and not the shipper was responsible. In other words, the suit against the railway company was upon exactly the same cause of action and presented identically the same issue threshed out and decided in favor of the railway company against the warehouse company and Train in the former case. It is true the bill of lading was issued to the warehouse company and not to Train, but it was decided in the Train Case that "it (the bill of lading) was a contract made for plaintiff's (Train's) benefit," and that Train could sue notwithstanding. That is to say, there was identity of interest and privity between the warehouse company and Train as to the bill of lading and the claim against the railway company based thereon. Second Nat. Bank of Saginaw v. Woodworth (D.C.) 54 F.(2d) 672; Cuneo Importing Co. v. American Importing & Transp. Co. (D.C.) 241 F. 421; Bickford's, Inc., v. Federal Reserve Bank of New York (D.C.) 6 F.Supp. 928, and cases therein cited; Mohr v. Langan, 77 Mo.App. 481, 490, affirmed 162 Mo. 474, 63 S.W. 409, 85 Am.St.Rep. 503.

It is also true that the warehouse company was not a party plaintiff in the Train suit, but was a defendant. As to the cause of action under consideration, however, and the issue of destruction of the freight by shipper's negligence, it must be ranged with the plaintiff Train. "It is elementary, of course, that, in any judicial proceeding, the arrangement of the parties on the record, so long as they are adverse * * * is of no consequence. A judgment is as binding upon an unwilling defendant as it is upon a willing plaintiff." Chicago, R. I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 615, 46 S.Ct. 420, 422, 70 L.Ed. 757, 53 A.L.R. 1265; Nave v. Adams, 107 Mo. 414, 420, 17 S.W. 958, 960, 28 Am.St.Rep. 421. The warehouse company joined with Train against the railway company by its pleading and by its position throughout the litigation, and the adjudication was against it, and it was obliged to and did pay the loss.

From these considerations it follows that the warehouse company was estopped by the state court judgments from pressing against the railway company the claim upon which it has recovered in the federal district court. That is to say it was estopped to claim that the automobiles had not been lost by the shipper's negligence while preparing them for shipment. Corcoran v. C. & O. Canal Co., 94 U.S. 741, 24 L. Ed. 190; Scotland County v. Hill, 112 U.S. 183, 5 S.Ct. 93, 28 L.Ed. 692; (Cf. Larsen v. Northland Transp. Co., 292 U. S. 20, 54 S.Ct. 584, 78 L.Ed. 1096); Scanlon v. Kansas City, 325 Mo. 125, 141, 28 S. W.(2d) 84; National Bank of Commerce v. Maryland Casualty Co., 307 Mo. 417, at page 435, 270 S.W. 691; City of Springfield v. Plummer, 89 Mo.App. 515, loc. cit. 529; Stone v. United States (C.C.A.) 64 F. 667, 671; Chand, Res Adjudicata, 78; Van Fleet on Former Adjudication, Vol. I, p. 576, § 256; 15 R.C.L. 1013, § 487; Freeman on Judgments, Vol. I, p. 922, § 425 (5th Ed.); (Cf. Bakula v. Schwab, 167 Wis. 546, 168 N.W. 378, 380).

In Stone v. United States, supra, the court quoted: "The best and most invariable test as to whether a former judgment is a bar is to inquire whether the same evidence will sustain both the present and the former action. If this identity of evidence is found, it will make no difference that the form of the two actions is not the same. * * * Whatever be the form of action, the issue is deemed the same whenever it may, in both actions, be supported by substantially the same evidence." Freeman on Judgments, § 259.

It was said by the Missouri Court of Appeals in City of Springfield v. Plummer, supra:

"An issue once tried on its merits and reduced to a final judgment, however raised, precludes the retrial of the same issue between the same parties in any other form of action.

"If they [the parties] were adversary parties, * * * then that the judgment would be a complete and effectual bar * * * admits of no doubt, irrespective of the fact that they were co-defendants."

In Georgia Ry. & Banking Co. v. Wright, 124 Ga. 596, 53 S.E. 251, 254, the court said: "The mere circumstance of any persons having been formally arrayed on the same side in a suit is immaterial, * * * and it is agreed upon now that they will be estopped by a decision on a matter which was actually in issue between them, and as to which they had an active controversy against each other. Hukum Chand, Res Adjudicata, § 78; Van Fleet, Former Adjudication, p. 576, § 256; 24 Am.& Eng.Enc.L. (2d Ed.) 733; 1 Dan. Ch.Pl.& Pr. (6th Am.Ed.) 659; Foster Fed. Pr. § 300; Case v. Beauregard, 101 U.S. 688, 25 L.Ed. 1004; Corcoran v. C. & O. Canal Co., 94 U.S. 741 [24 L.Ed. 190]; Riley v. Bank, 81 Md. 14, 31 A. 585; Louis v. Brown Township, 109 U.S. 163, 3 S.Ct. 92, 27 L.Ed. 892; Scotland County v. Hill, 112 U.S. 183, 5 S.Ct. 93, 28 L.Ed. 692; Waldo v. Waldo, 52 Mich. 91, 17 N. W. 709."

In a suit in which defendants were litigating a question between themselves, Nave v. Adams, supra, it was said: "This conclusion is not affected by the consideration that Mrs. Adams and Milton J. Bundy were both defendants in West v. Bundy [78 Mo. 407]. Their interests were essentially adverse to each other, and the adjudication respecting them, upon the pleadings, clearly raising such an issue, is as conclusive as though they had occupied the more formal positions of plaintiff and defendant as to that issue. [Citing cases.]"

In Young v. Byrd, 124 Mo. 590, 597, 28 S.W. 83, 84, 46 Am.St.Rep. 461, the court said in respect to an action which had been litigated in a probate court between the parties defendant: "It is immaterial that the forms in which the same issue may arise are different. If it is once finally decided by a competent court on the merits, between the parties whose rights are afterwards sought to be relitigated, the decision binds them. Wager v. Ins. Co., (1893) 150 U.S. 99, 14 S.Ct. 55 [37 L.Ed. 1013]. Nor is it essential that all the parties to both proceedings are identical."

Reference has been made to a long line of Missouri decisions concerning actions in which municipalities of the state are joined with others as defendants. It has been held that section 7539, Revised Statutes of Missouri 1929 (Mo.St.Ann. § 7539, p. 5982), contemplates that when a city of over 150,000 inhabitants is sued for primary negligence of another, proof may be heard on the question of primary and secondary negligence as between defendants. The cases are collated in Missouri Dist. Telegraph Co. v. Southwestern Bell

Telephone Company (Mo.Sup.) 79 S.W. (2d) 257, but fall outside the scope of our inquiry in this case.

The warehouse company has contended that the judgments in the state courts could not be held res adjudicata against it because the railway company and the warehouse company were defendants in Train's suit and it contends no rights between themselves were adjudicated. It cites, among others, City of Springfield v. Plummer, supra; Scheer v. Trust Co. of St. Louis County, 330 Mo. 149, 49 S.W. (2d) 135, 143; Peters v. City of St. Louis, 226 Mo. 62, 125 S.W. 1134, 1137, 21 Ann.Cas. 1069; Fulton v. Fisher, 239 Mo. 116, 143 S.W. 438; Wolz v. Venard, 253 Mo. 67, 161 S.W. 760; Fritsch Foundry & Mach. Co. v. Goodwin Mfg. Co., 100 Mo.App. 414, 74 S.W. 136, 139; E. E. Souther Iron Co. v. Woodruff Realty Co., 175 Mo.App. 246, 158 S.W. 69, 72; Boston & M. R. R. v. Sargent, 72 N.H. 455, 57 A. 688.

In City of Springfield v. Plummer, supra, a judgment had been obtained against the city for the death of a sewer contractor's workman. The sewer contractor himself had been made a party defendant in the suit charged with being a joint tort-feasor with the city, but had escaped liability. The city, having paid the judgment against it, sued the sewer contractor and his bondsman for recoupment. It set out the petition in the suit where the judgment had been recovered against it, and alleged that it had been obliged to and had paid the judgment and charged that the contractor and his bondsman were liable to reimburse it. The sewer contractor and his bondsman successfully demurred in the lower court on the ground that the judgment in the suit whereby the contractor had escaped from liability was res adjudicata. The St. Louis Court of Appeals reversed on the ground that "there is no allegation in the petition [demurred to below] by which it is stated or from which the inference can be fairly drawn, that in the trial of the Scott Case [where judgment went against the City and the contractor escaped], appellant [the city] and Plummer [the contractor] assumed, or occupied adverse positions in the trial of that suit." "Whether Plummer joined the city in this [the defense of assumption of risk] or in any other defense made by it, or sought to exculpate himself by casting the blame on the city's en-gineer, is not to be ascertained by anything that is to be found in the petition. * * * The Polk county judgment is conclusive of all the issues involved in the pleadings in that case, and is conclusive against the city of Springfield that Scott [the workman] came to his death by reason of its negligence, and is conclusive as between Mrs. Scott and Plummer that Scott did not come to his death through the negligence of Plummer, but it is not conclusive of the latter fact as between Plummer and the city, who were co-defendants in the suit, unless that issue was raised between them in some manner at the trial. * * * The full record . * * * can only disclose whether [they] joined in a common defense, or became adversary parties. If the defense was a common one, and in no respect adverse, it is very certain the judgment furnishes the respondents no bar to a recovery in this suit." But the court recognizes and quotes from Henry v. Woods, 77 Mo. 277, 280, that:

"The fundamental rule on this subject is, that a matter once adjudicated by a court of competent jurisdiction may be invoked as an estoppel in any collateral suit, in any court of law or equity, or admiralty where the same parties or their privies, or one of the parties and the privy . or privies of the other allege anything contradictory to it.

"Parties are defined * * * to be: 'All persons having a right to control the proceedings, to make defense, to produce or examine witnesses, and to appeal from the decision if an appeal lies.' [1 Greenleaf Evidence, § 535.]"

We find nothing in the decision or the expressions of the court that militate against the conclusion that the warehouse company was estopped in this case to relitigate with the railway company the issues which had been clearly defined and joined between them in the Train Case.

In the case of Scheer v. Trust Co. of St. Louis, supra, the court said:

"The instant suit is not an action between the same parties nor upon the same cause of action, as in the Hurst Company suit. Even if the parties herein, though codefendants, might have by their pleadings assumed the position of adversaries in the Hurst suit (Springfield v. Plummer, 89 Mo.App. 515), they did not do so. Neither presented any claim for

an accounting as against the other. * * *

"The learned trial court correctly concluded that the accounting in the Hurst Company suit did not adjudicate plaintiff's claim against defendants herein and was no bar to this action."

These quotations show the reasons for the refusal to sustain a plea of res adjudicata. But, on the other hand, the court said: "There can be no doubt that, upon proper pleadings, a judgment may determine the rights of the defendants even between themselves, and our Code provides for such a proceeding, but a judgment against defendants, if there are no issues between them, does not bind them as against each other."

If the warehouse company and the railway company had merely, each for himself, denied negligence in the Train Case there would have been no adjudication between themselves upon the issues presented by the present suit. But such were not the pleadings of the parties. Issues were raised between them, as has been pointed out. The railway company stood on its charge of loss from shipper's negligence and the warehouse company upon its claim of acceptance of the freight by the railway company and subsequent loss from causes for which the railway company was liable as a common carrier, practically an insurer of the goods. The specific issue was litigated and determined.

In Peters v. City of St. Louis, supra, the city of St. Louis and three commissioners of the South Market had been made parties defendant to a suit brought by the circuit attorney of the city of St. Louis to have the market place decreed a purpresture and nuisance. The city had filed a general denial and it was held that the decree dismissing the bill was not res adjudicata to a suit afterwards brought by successors in office of the market commissioners to enjoin the city from removing the market house. The court held that there had been no issue in the former suit between the market commissioners and the city and no adjudication as between them. The court cited from Van Fleet's Former Adjudication, vol. I, par. 256: "Unless the defendants contest an issue with each other, either upon the pleadings between them and the plaintiffs, or upon cross-pleadings between themselves, it will not be res adjudicata in a litigation between them. Of course, a

judgment determining the rights of the defendants between themselves, under proper pleadings, is conclusive upon them. But a judgment against them, if there are no issues between them, does not bind them as against each other."

In E. E. Souther Iron Company v. Woodruff Realty Co., supra, it appeared that plaintiff, an iron company, agreed to occupy a building to be erected by the defendant corporation, and to facilitate the work took out the permit in its own name and nominally assumed direction. An employee working on the building was injured and recovered from plaintiff on the theory that it was his master, the defendant not being a party to the action. Held that the adjudication was not conclusive as between the plaintiff and the defendant so as to preclude plaintiff from recovering money paid in satisfying the judgment, for only those parties are concluded between whom the matter in issue in the second suit was adjudicated, and here defendant was not even a party and there was no controversy between it and the plaintiff. We think the facts clearly distinguish from the case at bar, as the court said: "In the case at bar there was no adjudication whatever, as between the Souther Iron Company and the Realty Company, as to their respective liability; no joint defense, no antagonistic defenses interposed by either as defendants" and "the defendant * * * was not a party of record in the Kirn action."

In Fritsch Foundry & Machine Co. v. Goodwin Mfg. Co., supra, it was ruled that a nonsuit in an action upon a contract to recover a sum certain was not a bar to a subsequent suit upon quantum meruit. The court found that different issues were presented. The court cites from Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit."

It is insisted here for the warehouse company that there may be uncertainty as to the precise question determined in the Train suit. But we are satisfied that there is no uncertainty. The issues were clearly

defined by the pleadings, the testimony, the instructions and the verdict in the trial court, and most explicitly by the opinion of the Court of Appeals.

In Boston & M. R. R. v. Sargent, supra, the owner of property adjacent to the railroad yards had recovered judgment against the railroad and a shipper jointly for damage occasioned by fire communicated from a stove in a boxcar in which the shipper's goods were stored. The judgment was held not to be res adjudicata in the subsequent suit between the railroad company and the shipper except as to certain issues. Other issues of the second action it is pointed out had not been and could not have been litigated between the railroad company and the shipper in the first case and so, as to those issues, there was no res adjudicata.

Fulton v. Fisher, supra, and Wolz v. Venard, supra, are cited to the point that defendants in an action are not permitted to inject into the plaintiff's lawsuit controversies which are between themselves merely and which are foreign to the plaintiff's action. It is held that the Missouri statute "does not authorize a counterclaim or equitable cross action of one defendant against another except as one defendant may be entitled to such relief against another as will enable him to make good a defense to the plaintiff's suit. Whatever one defendant may have as against another must be of a character responsive to the plaintiff's suit. * * * The statute does not authorize one defendant to inject into the plaintiff's suit an independent suit either at law or in equity against the co-defendant not necessary or germane to his defense to the plaintiff's suit."

It seems very clear that in the Train Case the railway company's plea of shipper's negligence causing the loss was immediately and directly responsive to Train's claim that the railway company had received and accepted the property for shipment and undertaken to transport it and was, therefore, liable for its loss through negligence. And it was also so directly responsive to the warehouse company's claim of the same tenor and effect. Likewise, the pleading of the warehouse company that it was the agent for Train and that pursuant to its agency contract it had delivered the automobiles to the railway company and that the railway company had accepted delivery and issued its bill of lading. These pleadings presented precise, definite issues about which there is no uncertainty.

And nothing has been found in conflict with the fundamental precept of the law of res adjudicata that the questions raised upon issues actually joined between adversary parties and litigated and determined by the judgment or decree are settled thereby and the judgment or decree may be relied upon as an estoppel by any such party as against any other party. Town of Flagstaff v. Walsh (C.C.A.) 9 F.(2d) 590; Pittsburgh & L. E. R. Co. v. Borough of McKees Rocks, 287 Pa. 311, 135 A. 227; Sherman v. Smith, 185 Iowa, 654, 169 N.W. 216; Smith v. Cretors, 181 Iowa, 189, 164 N.W. 338.

It has been contended that this action of the warehouse company against the railway company does not proceed in "the same right or capacity of the parties" as did the former actions. But we do not find such a distinction to exist. In the Train Case the warehouse company did set up the bill of lading issued by the railway company, and asserted liability flowing therefrom to the same extent as it does in this case. We think there was complete identity between the claim of right asserted by the warehouse company in the Train Case and in this case. The warehouse company had its opportunity to and endeavored to make out a case of liability against the railway company for accepting the delivery of the freight and failing to protect it against loss, and the warehouse company was unable to sustain that claim against the plea of shipper's negligence causing the loss, asserted and relied on by the railway company. "This doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice." Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299, 37 S.Ct. 506, 508, 61 L.Ed. 1148. "The doctrine of res judicata is not a technical doctrine applicable only to records. It is a very substantial doctrine, and it is one of the most fundamental doctrines of all courts, that there must be an end of litigation, and that the parties have no right of their own accord, after having tried a question between them and obtained a decision of a court, to start that litigation over again on precisely the same questions." City of Boston v. McGovern (C.C.A.) 292 F. 705, 711.

We conclude that the trial court was in error in refusing to find that the claim asserted and sued on by the warehouse company in this case had been fully adjudicated against it in the litigation in the state courts.

Our conclusion on this question makes it unnecessary for us to discuss other assignments of error.

The appeal in case No. 10483 is dismissed.

Case No. 10406 reversed and remanded for further proceedings consistent herewith.