LIVESAY INDUSTRIES, Inc. et al. v. LIVE-SAY WINDOW CO., Inc.

No. 13866.

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1953.

J. M. Flowers, Henry M. Sinclair, D. H. Redfearn and Ralph H. Ferrell, Miami, Fla., for appellants.

Charles R. Fenwick and Thomas B. Van Poole, Jr., Washington, D. C., Hollis Rinehart, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and STRUM and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

These appeals are by plaintiffs and defendant respectively from the respective provisions of the decree in a patent infringement suit which each regards as adverse to it. The decree, holding the patent valid and infringed and enjoining further infringement by the defendant, held that plaintiffs were guilty of laches in respect of the infringement, and that, because thereof, they could recover no damages resulting from the infringement prior to the decree. Further, and for the same reason, it restrained the injunction issued against further infringement so as to permit the defendant to fill all contracts and orders taken or entered into by it prior to October 5, 1951, the date of the announcement of the decree.

The case arose, it comes here, in this way. Alleging: that they are the owners of U. S. Letters Patent, No. 2166870 for an invention in concrete window trim and method of making; and that the defendant, formerly, but no longer, a licensee thereunder, is and for some time past has been, infringing and contributing to the infringement thereof; plaintiffs, on October 7, 1949, brought this suit for a preliminary and final injunction against further infringement and an accounting for profits and damages resulting therefrom.

For answer, defendant, admitting that it had at one time been a licensee under the letters patent and that it was no longer such, denied the validity of the patent and that what it was and had been doing was infringement thereof. It also, by cross-bill, charged plaintiffs with unfair competition in using "Livesay" as a part of their corporate name and sought an injunction, restraining them from continuing to do so, and the recovery of damages for the use already made.

On May 11, 1950, plaintiffs' motion for summary judgment, determining and decreeing, on the authority of the decision and judgment in Livesay v. Drolet [1] and because of the bar of *res adjudicata* and of estoppel arising thereout, that the letters patent are valid and infringed, came on to be heard and was sustained, and it was ordered, adjudged and decreed, on the grounds of *res adjudicata* and estoppel, that the defendant is not entitled to contest the validity of the letters patent.

It was, however, further determined in effect that the defense of no infringement was still open to the defendant and that the master theretofore appointed to take testimony and report his findings, should proceed with his inquiry into plaintiffs' charges of infringement and defendant's charges of unfair competition in the use of the name "Livesay".

Thereafter, on July 27, 1951, the master having taken voluminous evidence on the issues tendered, filed a full and careful report. In it, after pointing out that no evidence had been offered as to damages, costs, or attorneys' fees, and that he assumed the court would deal later with these matters, he found in favor of plaintiffs and against defendant, and that plaintiffs should have, and defendant should be denied, the injunction each prayed for.

Defendant filed objections and exceptions to the master's report, while plaintiffs moved to confirm it and for an order referring the cause to the master on the question of accounting and damages, and also sought leave to amend its prayer so that it would read:

"Wherefore, plaintiffs demand preliminary and final injunctions against further infringement by defendant and those controlled by defendant, an accounting of damages, that plaintiffs recover treble the amount of said damages plus reasonable attorneys' fees, and an assessment of costs against defendant."

1. Reported in D.C., 38 F.Supp. 885.

All of these motions were set for hearing and heard on October 5, 1951, and on October 8, the district judge entered his final decree.[2] Plaintiffs' appeal is from these portions of the decree:

(1) The portion of paragraph 6 excepting from the injunction "any precast monolithic concrete window frame as constructed and exemplified".

(2) Paragraphs 8 and 9 of the decree denying plaintiffs' motion to amend its prayer and to refer the cause to the master for an accounting and the determination of plaintiffs' damages.

(3) Paragraph 11 denying plaintiffs' damages because of their laches; and that part of par. 12 making the injunction inapplicable to defendant's pending contracts and thus permitting it to continue its infringement after the decree.

Defendant's appeal is from the portions of the judgment finding the patent valid and infringed and granting plaintiffs an injunction.

Here plaintiffs, on their appeal, vigorously contest the finding and judgment of the court that they have been guilty of laches in asserting their claim and, therefore, may not recover any damages for the infringement found.

Pointing out: that these findings are directly contrary to the findings of the master who heard all the witnesses in person; and insisting that they are without any substantial evidence to support them; appellants urge upon us that in denying recovery, after notice of their intention to sue was brought home to defendant and certainly after service in the suit, they are contrary to all equitable principles as established by the decided cases[3] and to the statute[4] authorizing damages for infringement.

■ We agree with plaintiffs that, in denying plaintiffs damages and in denying their motion to amend their pleadings and refer the matter of accounting and damages to the master, the court's decree is without support in the evidence and that it finds no support in the adjudicated cases. Whatever, in the light of the record and in view of the prior relations of the parties, might have been said of the finding of laches and its application in this case if denial of damages had been limited to the time before defendant had been put upon positive notice that plaintiffs were claiming that its activities infringed, we do not determine, for the denial was not so limited. There can be no basis in law or in equity or under the statute, 35 U.S.C. § 70, however, for the holding and judgment made here, that the defendant, after notice was reasonably brought home to it, particularly by service in this suit, that plaintiffs were claiming that its activities infringed, could with impunity continue to pirate plaintiffs' invention and rob them of the protection of their patent.

In Switzer Bros. v. Centennial Liquor Stores, 5 Cir., 186 F.2d 414, 415, where the trial court found three patents to be

---

2. In substance this:
(1) adjudged the patent valid and infringed as to all four claims thereof, and permanently enjoined the defendant from further infringing them, but excepting "any precast monolithic concrete window frame as constructed and exemplified";
(2) Denied defendant's counter claim for unfair competition;
(3) Denied plaintiffs' motion to amend the prayer of their complaint to pray for treble damages and attorneys' fees, and to refer the cause to the master for an accounting and for damages;
(4) Denied plaintiffs, because of laches on their part, all damages for past infringement;
(5) Qualified the injunction ordered in the decree to make it inapplicable to actions on defendant's part in fulfilling or completing orders or contracts taken or entered into prior to 3:30 p. m., Oct. 5, 1951, when the court announced its decision.

3. Allied Metal Stamping Co. v. Standard Elec. E. Corp., 2 Cir., 57 F.2d 296; Montgomery Ward & Co. v. Clair, 8 Cir., 123 F.2d 878; Shaffer v. Rector Well Equip. Co., 5 Cir., 155 F.2d 344; Switzer Bros. v. Centennial Liquor Stores, 5 Cir., 186 F.2d 414; Cf. Westinghouse Elec. & Mfg. Co. v. Condit, C.C., 159 F. 154; Wolf, Sayer & Heller v. U. S. Slicing Machine Co., 7 Cir., 261 F. 195.

4. 35 U.S.C. § 70 [1952 Revision, 35 U.S. C.A. § 284].

valid and infringed but denied damages, this court said:

> "Upon plaintiff's second point, **we** agree that the court erred in not ordering an accounting and further discovery proceedings to determine the extent to which defendants Blake and New had infringed the patents in suit and that the court's action in discharging Blake and New without a determination of damages has summarily deprived plaintiff of the compensation to which it is entitled under the Statute."

We think the decree was particularly egregious in permitting defendant's spoliation to continue after the entry of the judgment finding defendant guilty of infringing and enjoining its further continuance thereof.

■ As to that part of their appeal, however, which attacks the finding and order in par. VI of the decree which, finding that defendant's Exhibit B is not an infringing form, excludes it from the injunction, while we cannot say that plaintiffs' position is without support, neither can we say, as we must if we would reverse the judgment, that the finding is clearly erroneous.

As to plaintiffs' appeal, therefore, the judgment, except in the respect just pointed out, will be reversed and the cause remanded for further and not inconsistent proceedings.

■ On defendant's appeal, the matter stands quite differently. For the reasons and upon the authorities hereinafter briefly set forth, we are of the clear opinion that, under the undisputed facts,[5] as to its part

---

5. These, as set out in the master's report, are: That in 1937 Mr. Everett G. Livesay came forward with an idea having to do with a window frame which was believed by him to be novel and to afford considerable promise and advancement for the building trade.

Mr. Livesay apparently needed capital to *seek his patent and to use and develop it.* He went to a Mr. John T. Lewis in Coral Gables in 1937, and discussed with the latter the former's idea. They entered into an arrangement whereby Mr. Lewis formed a corporation known as Lewis & Company, Inc. (incorporated Aug. 11, 1937), and on October 13, 1937, by written instrument, Mr. Livesay granted an exclusive license to that corporation to manufacture and sell the structures for which the application for patent had been filed October 7, 1937. It covered also any patents actually to be issued pursuant to said application. This agreement was silent as to the use of the trade name "Livesay". *It bound Lewis and Company to finance the prosecution of the patent application and any litigation involving alleged infringement of that patent so long as Lewis and Company was the licensee.* It provided for royalty payments and the like. Consequent upon this, Mr. Livesay went to work for Lewis & Company on an agreed salary and provided in said agreement. On December 22, 1937, Lewis & Company, Inc., with the knowledge and apparent consent of Mr. Livesay changed its corporate name to its present name, to-wit: Livesay Window Company, Inc. Pending the patent application Lewis & Company and its said suc-

cessors proceeded to manufacture and market the structure for which Mr. Livesay had made application for patent.

On Nov. 28, 1939, Everett Grey Livesay and Livesay Window Company, Inc. brought suit against Emmet O. Drolet, doing business as Drolet Precast Window Company for alleged infringement of the patent which had been issued Mr. Livesay on July 18, 1939, and for injunction, accounting, etc. The case was prosecuted successfully and the defendant was enjoined. That case is reported in D.C., 38 F.Supp. 885. Among the defenses raised in that case were several which are raised in the instant case, namely, that the Livesay patent represented no invention, that it was invalid, and that the Defendant was practicing the teachings of the prior art. The Court there declared the patent valid against such defenses and ruled against Defendant in all particulars. There was no accounting or damages by stipulation. *Patent counsel for the plaintiffs in the Drolet case was the same firm which is patent counsel for the defendant in the instant case.*

*Following the final disposition of the Drolet case, the said then Licensee, the present defendant, continued to operate in the manufacture and sale of the patented structure until on or about March 5, 1942, when Mr. Livesay exercised his right to terminate that licensing agreement because* that Licensee ceased paying the required minimum royalties. The defendant contends that it ceased to pay said minimum royalty because of war conditions which made it impossible or impractical to obtain materials and to market its product. From

in obtaining the patent and as co-party plaintiff in instituting and prosecuting the Livesay-Drolet suit, defendant is concluded from contesting the binding force of the judgment as to matters determined in it, as well of fact as of law [6] and, therefore, from contesting the validity of the patent.

 The principle supporting · our holding that, under· the facts of this case, though the defendant and plaintiffs were not adversary, but co-parties, the judgment in the Drolet case barred and concluded the defendant on the issues of patent validity, and of infringement by the devices adjudicated in that ·suit to ·be infringing, is thus well stated in National Bond Holders Corp. v. Seaboard Citizens Nat. Bank, 4 Cir., 110 F.2d 138, 144:

"Ordinarily, parties to a judgment are not bound by it in a subsequent controversy between each other unless they were adversary parties in the original action. City Bank of Wheeling v. Rodehamel, [Rhodehamel] 4 Cir., 223 F. 979; Freeman on Judgments, 5 Ed. vol. 1, §§ 422–425, but .there are exceptions to the rule, as where co-parties do in fact occupy the attitude of adversaries, e. g., Atchison, T. & S. F. R. Co. v. A. B. C. Fireproof Warehouse Co., 8 Cir., 82 F.2d 505; *or where some finding of fact is made in the first suit which is an essential element in a claim or action subsequently brought by one against the other.* As said in Freeman on Judgments, § 425, 'insofar as their rights or obligations inter se are dependent on their rights or obligations toward their common adversary, the judgment adjudicating the latter is conclusive upon codefendants in subsequent litigation between them'. Thus it was held in United States Fid. & Gty. Co. v. Haggert, [Haggart] 8 Cir., 163 F. 801 (Sanborn, VanDevanter and Munger), that a judgment recovered by the United States against a marshal and the surety on his bond, on account of defalcation by the marshal's deputies, is conclusive of the existence of the defalcations and of the amount thereof in a subsequent action brought by the marshal against the surety on another bond, whereby the Surety Company bound itself to· indemnify the marshall for every act done or neglected to be done by the deputies. See, also, Corcoran v. Chesapeake and Ohio Canal Co., 94 U.S. 741, 24 L.Ed. 190; The No. 34, 2 Cir., 25 F.2d 602, 606; Kent's Adm'r v. Kent's Adm'r, 82 Va. 205; Ellis v. Cole, 105 App.Div. 48, 94 N.Y.S. 1031." (Emphasis supplied.)

 Our position that the judgment estops the defendant on that issue is further supported by ·the authorities [7] holding that where one in whose favor a judgment is rendered accepts the benefits, he is estopped from questioning the validity, of the judgment in any subsequent litigation.

Further, all questions of reported cases aside, it ought to be, we think it is, clear that, upon every principle of judicial estoppel, including the estoppel arising out of inconsistent positions in legal proceedings,[8] defendant may not, as it attempts to do here, so trifle with the judicial process.

 By solemn affirmation in the patent office and thereafter by solemn affirmation in its pleadings prepared and filed by the same ·counsel who represents it in this suit, it affirmed the patentability of the invention and the validity of the patent. By evidence offered and argument made by the same counsel in support of that affirmation, it induced the district judge, upon full and careful consideration, as evidenced by his opinion in Livesay v. Drolet, D.C., 38 F. Supp. 885, *to hold the patent valid and in-*

time of said termination of the then license agreement until the early part of June, 1945, the present defendant did not operate its business. It manufactured nothing.

6. State of Oklahoma v. Texas, 256 U.S. 70, 41 S.Ct. 420, 65 L.Ed. 831; American Trust Co. v. Butler, 5 Cir., 47 F.2d · 482.

7. Burgess v. Nail, 10 Cir., 103 F.2d 37; Wilson v. Union Elec. Light & Power Co., 8 Cir., 59 F.2d 580; Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 115 F.2d 268; Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578.

8. 19 Am.Jur., Estoppel, Secs. 72, 73 and 74.

383

fringed. During the pendency, and upon the strength of the suit and afterwards upon the strength of the judgment in it, it continued to operate as a licensee. Defendant ought to be, we think it is, completely estopped from doing an about face in this case in the same court and forum and repudiating what it had before as solemnly affirmed there.

On the issue of infringement, it is sufficient to say: that this was and is a question of fact; that we are not convinced that the findings are clearly erroneous, indeed we think master and judge were right in finding infringement to the extent that they did find it; and that the judgment on defendant's appeal should be affirmed.

On defendant's appeal, the judgment is affirmed. On plaintiffs' appeal, it is reversed and remanded for further and not inconsistent proceedings.

Affirmed in part and reversed in part.